**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN R. SKEELS, Individually and on behalf of all others similarly situated, | 1:21-cv-04161-LDH-PK |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| PIEDMONT LITHIUM, INC., KEITH D. PHILLIPS, BRUCE CZACHOR and GREGORY SWAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**TERENCE MOSS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

00643148;V1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

   I.   THE COURT SHOULD APPOINT MOSS AS LEAD PLAINTIFF ................................. 5

      A.   Moss Has The Largest Financial Interest In This Action ........................................... 5

      B.   Moss Also Has the Largest Financial Interest Under the *Olsten/Lax* Factors ............. 9

      C.   Moss Satisfies The Rule 23 Requirements ............................................... 12

      D.   There Is No Proof To Rebut The Strong Presumption In Favor Of Appointing Moss Lead Plaintiff ...................................................... 12

      E.   There Are Other Compelling Reasons Not To Appoint The Other Competing Movants ........................................................... 13

CONCLUSION ...................................................................................... 16

**Page(s)**

**Cases**

*Applestein v. Medivation Inc.,*
No. C 10–00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)............................. 11, 15

*Beach v. Healthways, Inc.,*
2009 WL 3245393 (M.D. Tenn. Oct. 5, 2009) ................................................................... 14

*Bo Young Cha v. Kinross Gold Corp.,*
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ...................................................................... 7

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.,*
2021 WL 396343 (S.D.N.Y. 2021) ..................................................................................... 6

*Darish v. Northern Dynasty Minerals Ltd.,*
2021 WL 1026567 (E.D.N.Y. Mar. 17, 2021)..................................................................... 10

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ..................................... 1, 2, 7

*Eichenholtz v. Verifone Holdings, Inc.,*
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................................................................... 11

*Feder v. Elec. Data Sys. Corp.,*
429 F.3d 125 (5th Cir. 2005) ............................................................................................. 14

*Ferrari v. Impath, Inc.,*
2004 WL 1637053 (S.D.N.Y. July 20, 2004)..................................................................... 14

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) .................................................................................. 6, 7, 12

*In re Cendant Corp. Litig.,*
264 F. 3d 201 (3d Cir. 2001) ............................................................................................. 13

*In re Comverse Tech., Inc. Sec. Litig.,*
No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)................. 1, 6, 7, 8

*In re Comverse Tech., Inc. Sec. Litig.,*
06-CV-1825 (NGG)(RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ................................ 1

*In re Evolus Inc. Sec. Litig.,*
2021 WL 4251957 (S.D.N.Y. Sept. 17, 2021) ................................................................... 7

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008)...................................................................................... 6

*In re KIT Dig., Inc. Sec. Litig.*,
   293 F.R.D. 441 (S.D.N.Y. 2013)...................................................................................... 10

*In re Olsten Corp. Securities Litigation*,
   3 F.Supp.2d 286 (E.D.N.Y.1998) ..................................................................................... 9

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan 4, 2004) ..................................................................... 13

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...................................... 14

*Kniffin v. Micron Technology, Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019) ............................................................................... 6

*Landry v. Price Waterhouse Chartered Accountants*,
   123 F.R.D. 474 (S.D.N.Y. 1989)...................................................................................... 14

*Lax v. First Merchants Acceptance Corp., No. 97 Civ.*,
   1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..................................................................... 9

*Maliarov v. Eros International PLC*,
   2016 WL 1367246 (S.D.N.Y. 2016) ................................................................................. 7

*Mulligan v. Impax Laboratories, Inc.*,
   2013 WL 3354420 (N.D. Cal. July 2, 2013) ..................................................................... 11

*In re Network Assoc., Inc. Sec. Litig.*,
   76 F.Supp.2d 1017 (N.D. Cal.1999).................................................................................. 13

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)....................................................................................... 13

*Pio v. General Motors Co.*,
   2014 WL 5421230 (E.D. Mich. Oct. 24, 2014)................................................................. 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004)...................................................................................... 6

*William Plagens, et al., v. Jenniffer D. Deckard, et al. Sergio Baron, et al.*,
   No. 1:20-CV-2744, 2021 WL 3284265 (N.D. Ohio Aug. 2, 2021) ....................................... 7

*Plymouth v. Innovative Techn.*,
   2021 WL 4298191 (S.D.N.Y. Sept 21, 2021) ................................................................... 9

*Rao v. Quorum Health Corp.,*
221 F. Supp. 3d 987 (M.D. Tenn. 2016) ................................................................. 15

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ........................................................................ 7

*Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*,
224 F.R.D. 353 (S.D.N.Y. 2004) ........................................................................ 4, 14

*Schueneman v. Arena Pharmaceuticals, Inc.,*
10CV2335 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ..................... 11

*Smajlaj v. Brocade Commc'ns Sys. Inc.,*
No. C 05-02042 CRB, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) .................... 15

*Smyth v. China Agritech, Inc.*,
2013 WL 12136605 (C.D. Cal. Sept. 26, 2013) ................................................... 13

*Tate v. Aterian, Inc.*,
2021 WL 3538144 (S.D.N.Y. 2021) ...................................................................... 10

*Zawatsky Zawatsky v. Vroom, Inc.*,
2021 WL 3498191 (S.D.N.Y. 2021) ........................................................................ 6

**Statutes**

15 U.S.C. §78u-4(a)(3)(B) ......................................................................................... 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ......................................................................... 6, 12

15 U.S.C. §78u-4(a)(3)(B)(iv) ................................................................................. 15

**Docketed Cases**

*See Francisco v. Abengoa, S.A.*,
No. 15 CIV. 6279 (ER), 2021 WL 4136899 (S.D.N.Y. Sept. 10, 2021)……………………7

*In re OSG Sec. Litig.*,
No. 12 CIV. 7948 SAS, 2015 WL 3466094 (S.D.N.Y. May 29, 2015)………………… 7

Terence Moss ("Moss") respectfully submits this memorandum in further support of his motion for appointment as lead plaintiff and approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as lead counsel for the proposed class, and in opposition to the competing motions pending before this Court.[1]

## PRELIMINARY STATEMENT

Moss should be appointed as lead plaintiff in this action and his selection of lead counsel should be approved because he has the largest financial interest of all competing movants and has made a *prima facie* showing that he satisfies the adequacy and typicality requirements of Rule 23. Accordingly, Moss is entitled to the PSLRA's "strong presumption" that he is the most adequate plaintiff to lead the proposed class. This "strong presumption" can only be rebutted with "proof" that Moss is somehow inadequate to lead the proposed class. No such proof exists here.

The PSLRA does not prescribe exactly how to calculate financial interest at the lead plaintiff stage, and, as such, courts apply several different accepted accounting methodologies to do so. In *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), the U.S. Supreme Court held that losses suffered prior to a corrective disclosure are not compensable under Section 10(b). Since then, many courts, including in this district and circuit, remove so-called "in and out" losses from the financial interest figures of lead plaintiff movants. *See*, *e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007), adhered to on reconsideration, No. 06-CV-1825 (NGG)(RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ("under *Dura*…any losses [a plaintiff]…incurred

---

[1] Competing motions were filed by: (i) Ace Association LLC ("Ace"); (ii) Anthony and Donna LaForgia (the "LaForgias"); (iii) Susan Joorabchi; (iv) Alfred B. Wieczorek; (v) Feng Xiao; (and vi) Connie and David Robinson (the "Robinsons"). Wieczorek filed a notice of non-opposition on October 1, 2021. ECF 19. The Robinsons, Joorabchi, and Xiao filed notices of non-opposition on October 5, 2021. ECF 24, 26, 27.

before [a defendant's] misconduct was…disclosed…are not recoverable, because those losses cannot be proximately linked to the misconduct at issue"). Applying *Dura* is particularly warranted in circumstances where, as here, "in and out" losses account for *all or a substantial portion* of the loss figures presented by lead plaintiff movants and thus serve to window dress their loss figures. The Court must consider *Dura* here to have a clear picture of the financial interest of each of the respective movants in this action before selecting a lead plaintiff on behalf of the proposed class.

The two movants that purport to have larger financial interests in this action than Moss, the LaForgias and Ace, claim losses of $501,129 and $129,807, respectively – but those figures include losses suffered *before* the only alleged corrective disclosure in the action on July 20, 2021. ECF 1, Skeels Cmplt. ¶50. In the exhibits accompanying their motion, the LaForgias list all their Piedmont sales on July 8, 2021 – only days after they bought their shares on July 5, 2021. Accordingly, *all* of the LaForgias' Piedmont shares were sold *before* the July 20, 2021 corrective disclosure. *See* ECF 7-3.[2] Likewise, in the exhibits accompanying its motion, Ace reports that it sold *most* (18,000 of 23,000) of its shares by June 23, 2021 – which was also *before* the July 20, 2021 corrective disclosure. *See* ECF 18-3. When these pre-disclosure transactions are eliminated under *Dura*, the LaForgias' financial interest is wiped out entirely, and Ace's financial interest is reduced by more than half to $63,600. *See* Exhibit A. In stark contrast, under *Dura*, Moss' losses *increase* to $133,669 from the previously reported $51,558. *See id*. Thus, under *Dura*, Moss has the largest financial interest in this action by a wide margin. *See infra* at 8.[3]

---

[2] The LaForgias provide settlement, rather than trade dates, for their Piedmont transactions. *See* ECF 7-1. Thus, the LaForgias' transactions likely occurred three days prior to when listed on their certification since settlement dates are usually three days after trade dates.

[3] If the Court chooses not to apply *Dura* here, it will be forced to find that the Laforgias (who have no compensable losses) have the largest financial interest in this action – an untenable result.

In addition, Moss also has the largest financial interest in this action under the "*Olsten/Lax*" factors often used by courts when assessing financial interest. These factors include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. Notably, Moss prevails on all but one factor (net expenditures) against the LaForgias (who should be out of the running anyway because they suffered no compensable losses), and prevails on every factor against the other competing movants. *See infra* at 10. Accordingly, Moss is the movant with the largest financial interest here.

Moss also readily satisfies the Rule 23 requirements. Moss is typical of other class members because he bought Piedmont shares during the class period and was harmed by the same alleged misstatements as other class members. Moss is also adequate to serve as lead plaintiff because he has no conflicts with other class members and has chosen experienced counsel as proposed lead counsel for the class. *See* ECF 14 at 5-8. Accordingly, Moss is entitled to the PSLRA's "strong presumption" that he is the most adequate plaintiff to lead the class. This presumption can only be rebutted with "proof" that Moss is somehow inadequate. There is no such proof here.

In contrast, though the Court should not engage in a beauty contest after identifying the presumptive lead plaintiff movant, there are other compelling reasons to not appoint the other competing movants in this action. In addition to lacking the largest financial interest, Ace should

---

Moreover, while Ace may argue that it should be appointed lead plaintiff as its losses are not entirely wiped out under *Dura*, Ace suffers from a host of debilitating Rule 23 impediments and, thus, is not qualified to serve as lead plaintiff anyway as detailed *infra* at 12-14.

also not be appointed as lead plaintiff because it suffers from serious Rule 23 impediments. Ace is a limited liability family investment company managed by Ehsan Afaghi. *See* ECF 18-4. Ace and/or Afaghi (who is an attorney) are subject to unique defenses under Rule 23 because they have been involved in 26 litigations in the past – and as plaintiff in 13 (*see* Exhibit B); in one case, Afaghi had to be compelled to attend his deposition and paid sanctions for "abuse of the discovery process" (Exhibit C); in the same case, Ace and Afaghi had allegations of fraudulent conveyance brought against them (Exhibit D at 8); and it was alleged that Afaghi falsely stated under oath that he was not a party to an action in which he was a defendant (Exhibit E at 2-4). These past acts, which Ace will no doubt seek to explain away, undeniably subject Ace to numerous unique defenses which Defendants will inevitably exploit at class certification.

Significantly, it is not the success of these unique defenses that is important to the Court's analysis here – it is the fact that they will be an inevitable distraction, a waste of the class' resources, could cause the denial of a class certification motion, and are simply unnecessary baggage that the class does not need. *See, e.g., Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 357 (S.D.N.Y. 2004) ("a defense unique to a named plaintiff" "can bar a finding of adequacy – even if that defense would not ultimately defeat that particular class representative's claim").

In addition, in 2015 Afaghi stated that he was 72 and in "bad health" when urging a court to expedite his case before his health further "deteriorates". *See* Exhibits F and G at 4. This concern, if it still exists, further weighs against appointing Ace as lead plaintiff over a class action that typically takes years to litigate from beginning to end. In sum, Ace has fundamental Rule 23 problems militating against its appointment as lead plaintiff that disqualify it from being appointed here.

As to the LaForgias, in addition to having no compensable losses here, their trading pattern of buying and then selling out all their shares three days later suggests an atypical trading dynamic that also can be raised as a unique defense under Rule 23.

For all these reasons and those discussed below, Moss has the largest financial interest in this action, satisfies Rule 23, and there is no proof to rebut the strong presumption in favor of appointing him as lead plaintiff. Accordingly, his motion for appointment as lead plaintiff and approval of lead counsel should be granted.

## ARGUMENT

## I. THE COURT SHOULD APPOINT MOSS AS LEAD PLAINTIFF

Section 21D(a)(3)(B) (15 U.S.C. §78u-4(a)(3)(B)) of the PSLRA sets forth a procedure for the selection of lead plaintiff in a class action lawsuit brought under the Securities Exchange Act of 1934 (the "Exchange Act"). *See* ECF 14 at 3-4. After a presumptively most adequate plaintiff is identified – by assessing the financial interest of the movants and whether there has been a *prima facie* showing of adequacy and typicality – the Court must determine if the strong presumption that attaches has been rebutted through "proof" that the presumptively most adequate "will not fairly and adequately protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff. Here, Moss asserts the largest financial interest of any qualified movant before the Court and satisfies the Rule 23 requirements, and there is no proof to rebut the strong presumption in his favor. Accordingly, Moss respectfully submits that he should be appointed as lead plaintiff in this action.

## A. Moss Has The Largest Financial Interest In This Action

The PSLRA does not specify a means of calculating the "largest financial interest," and in "the absence of statutory guidance or Second Circuit case law, the method used and the factors

considered in determining each movant's financial interest remain fully within the discretion of the district court." *Zawatsky Zawatsky v. Vroom, Inc.*, 2021 WL 3498191, at \*5 (S.D.N.Y. 2021); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 436; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404 n.15 (S.D.N.Y. 2004). *See also In re Cavanaugh,* 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In doing so, the court may select accounting methods that are both rational and consistently applied").

As noted above, in *Dura*, the Supreme Court held that losses suffered prior to a corrective disclosure are generally not compensable under Section 10(b) because an investor suffers no damage connected to an alleged fraud on shares that are bought *and* sold before a corrective disclosure removes the artificial inflation from the stock price. *Id.*, 544 U.S. at 338. While there is not one uniform method to measure financial interest, courts regularly apply a *Dura*-adjustment when determining which movant has the largest financial interest on lead plaintiff motions. *See*, *e.g.*, *Kniffin v. Micron Technology, Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) (noting "growing consensus among judges in this district that *Dura*-adjusted LIFO losses are the appropriate metric"); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at \*3 (S.D.N.Y. 2021) ("following the Supreme Court's decision in [*Dura*], courts in this district ordinarily will not include losses that occurred prior to the first corrective disclosure of the alleged fraudulent misrepresentation made by the defendant"); *Comverse*, at \*6 ("under *Dura*…any losses… incurred before Comverse's misconduct was ever disclosed…are not

recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation").[4]

All pre-disclosure transactions – buys and sales – thus should be backed out in a *Dura* analysis on a lead plaintiff motion. *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at \*5 (S.D.N.Y. 2012) ("LIFO excludes 'in-and-out' transactions, purchases and sales that occur during the class period, *i.e.*, after the stock price was fraudulently inflated and before it dropped due to a corrective disclosure…. Any gain or loss due to such transactions is reasonably read to reflect price fluctuations attributable to factors other than the fraud, and thus should be excluded from the PSLRA loss calculus").[5]

*Dura* is particularly necessary to adjudicate lead plaintiff motions like this one where movants' losses would be reduced significantly when in-and-out transactions are removed. *Cf. Maliarov v. Eros International PLC,* 2016 WL 1367246, at \*\*5, 7 (S.D.N.Y. 2016) (rejecting movant that lost $3.3 million before corrective disclosure; appointing movant that lost $1.3 million). This is so because the failure to perform a *Dura* analysis would leave this Court with a highly misleading picture of financial interest. Indeed, while sometimes a *Dura* analysis is

---

[4] *See also In re Evolus Inc. Sec. Litig.*, 2021 WL 4251957, at \*4 (S.D.N.Y. Sept. 17, 2021) (citing *Comverse*, 2007 WL 680779, at \*4); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures") (collecting cases); *Plagens v. Deckard*, 2021 WL 3284265, at \*8 (N.D. Ohio 2021) ("Mindful that a district court has discretion to use a methodology appropriate in the particular circumstances of each case, it is difficult to see how approximating losses that a lead plaintiff may not recover as a matter of law…advances the statutory text of or the congressional goals in enacting the Reform Act").

[5] Both the LaForgias' and Ace's attorneys have argued that courts should apply *Dura* on lead plaintiff motions. *See*, *e.g.*, *Francisco v. Abengoa, S.A.*, No. 15 CIV. 6279 (ER), 2021 WL 4136899 (S.D.N.Y. Sept. 10, 2021) (ECF 17 at 4 n.2) (Laforgias' counsel calculated financial interest using *Dura*); *In re OSG Sec. Litig.*, No. 12 CIV. 7948 SAS, 2015 WL 3466094 (S.D.N.Y. May 29, 2015) (ECF 58 at 2) (Ace's counsel argued for applying *Dura* at lead plaintiff stage).

unnecessary because the lead plaintiff movants have no in-and-out transactions, *e.g.*, they just bought during a class period and held through a corrective disclosure, or the movants' in-and-out transactions are relatively insignificant, this is not one of those cases.

Here, the one alleged corrective disclosure was on July 20, 2021. Skeels Cmplt. ¶50. On July 20, 2021, Lithium disclosed that it had not "applied for a state mining permit or a necessary zoning variance in Gaston County, just west of Charlotte, despite telling investors since 2018 that it was on the verge of doing so." *Skeels*, ECF 1 at ¶50. *Cf. Comverse*, at *6 ("[t]he facts that this court can and must consider are *in the complaint*, and on those facts, only losses resulting from the sales of the final 172,156 of P & P's holdings are recoverable"). The LaForgias list all their Piedmont sales on July 8, 2021– only days after their reported purchase on July 5, 2021 – and well before the July 20, 2021 corrective disclosure. ECF 7-2. Likewise, Ace sold over 75% (18,000 of 23,000) of its shares by June 23, 2021 – also well before the July 20, 2021 corrective disclosure. ECF 18-3. When these pre-corrective disclosure transactions are adjusted for *Dura*, the LaForgias' financial interest is wiped out entirely, and Ace's financial interest is reduced by more than half to $63,600. *See* Exhibit A. In contrast, after backing out his pre-corrective disclosure transactions (which include buys and sales), Moss's losses increase to $133,669. *See id.*[6]

The following chart shows the financial interest reported by each of the movants juxtaposed against their respective *Dura*-adjusted losses:

---

[6] Even if the Court was to remove only in-and-out losses (and not in-and-out gains) as part of its *Dura*-adjustment, which it should not do since all pre-disclosure transactions were of artificially inflated shares, Moss' losses ($51,558) would still represent the largest financial interest of any qualified movant before the Court as the LaForgias would still have no compensable losses and Ace would still suffer from a litany of fatal Rule 23 impediments. *See infra* at 12-14.

| Movant | FIFO LOSS | LIFO LOSS[7] | DURA |
|---|---|---|---|
| **Terence Moss** | **($51,558.11)** | **($51,558.11)** | **($133,669.55)** |
| | | | |
| **Ace Association LLC** | **($129,087.82)** | **($129,087.82)** | **($63,600.00)** |
| | | | |
| Anthony LaForgia | ($327,307) | ($327,307) | $0 |
| Donna LaForgia | ($173,822) | ($173,822) | $0 |
| **LaForgias** | **($501,129)** | **($501,129)** | **$0** |
| | | | |
| **Susan Joorabchi** | **($34,388.19)** | **($34,388.19)** | **($34,579.79)** |
| | | | |
| **Alfred B. Wieczorek** | **($23,020.00)** | **($23,020.00)** | **($23,020.00)** |
| | | | |
| **Feng Xiao** | **($37,528.00)** | **($37,528.00)** | **($37,528.00)** |
| | | | |
| **Connie and David Robinson** | **($17,956.82)** | **($17,956.82)** | **($17,956.82)** |

Accordingly, Moss has the largest financial interest of competing movants by a wide margin and should be appointed as lead plaintiff.

### B. Moss Also Has the Largest Financial Interest Under the *Olsten/Lax* Factors

Courts also often look to the *Olsten/Lax* factors when determining complicated lead plaintiff motions. These factors are derived from *In re Olsten Corp. Securities Litigation*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), and *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See*, *e.g.*, *Plymouth v. Innovative Techn.*, 2021 WL 4298191, at *2 (S.D.N.Y. Sept 21, 2021). The *Olsten/Lax* factors include:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

---

[7] FIFO stands for "first-in-first-out". LIFO stands for "last-in-first-out".

*Id.* (citing *In re KIT Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 445 (S.D.N.Y. 2013)). *See also Darish v. Northern Dynasty Minerals Ltd.*, 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021) ("[c]ourts in the Second Circuit have adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest"); *Tate v. Aterian, Inc.*, 2021 WL 3538144, at *2 (S.D.N.Y. 2021) ("to determine which Movant has the largest financial interest, this Court typically considers the *Lax/Olsten* factors").

A review of the *Olsten/Lax* factors further shows that Moss has the largest financial interest. Moss prevails on all four factors against all the competing movants with the exception of the LaForgias, against whom he prevails on three of the four factors (total shares purchased, retained shares, and loss):[8]

---

[8] The LaForgias have larger net expenditures than Moss, but that is a factor of lesser importance. The important factors are two and four – retained shares (because it reflects a *Dura* analysis) and losses. Moreover, the LaForgias are out of the running anyway since they have no financial interest after performing the necessary *Dura* analysis. *See supra* at 6-8.

| Movant | Total Shares Purchased | Net Shares Purchased (Retained Shares) | Net Expenditures | DURA LOSS |
|---|---|---|---|---|
| Terence Moss | 58,116 | 7,000 | ($426,172.11) | ($133,669.55) |
| | | | | |
| Ace Association LLC | 23,000 | 5,000 | ($394,987.82) | ($63,600.00) |
| | | | | |
| Anthony LaForgia | 16,012 | 0 | ($327,307) | $0 |
| Donna LaForgia | 7,750 | 0 | ($173,822) | $0 |
| LaForgias | 23,762 | 0 | ($501,129) | $0 |
| | | | | |
| Susan Joorabchi | 1,872 | 1,670 | ($127,792.40) | ($34,579.79) |
| | | | | |
| Alfred B. Wieczorek | 1,000 | 1,000 | ($77,700.00) | ($23,020.00) |
| | | | | |
| Feng Xiao | 3,000 | 3,000 | ($205,320.00) | ($37,528.00) |
| | | | | |
| Connie and David Robinson | 2,000 | 2,000 | ($130,070.00) | ($17,956.82) |

Highlighting the importance of the *Dura* analysis discussed above, some courts rely heavily on the second *Olsten/Lax* factor (net shares purchased) by applying a so-called "retained shares" analysis. *See, e.g., Pio v. General Motors Co.,* 2014 WL 5421230, at \*4 (E.D. Mich. Oct. 24, 2014) (noting "some courts have found the second factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery"); *Mulligan v. Impax Laboratories, Inc.,* 2013 WL 3354420 (N.D. Cal. 2013). *See also Eichenholtz v. Verifone Holdings, Inc.,* C07–06140MHP, 2008 WL 3925289, at \*2 (N.D. Cal. Aug. 22, 2008); *Schueneman v. Arena Pharmaceuticals, Inc.,* 10CV2335 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) (adopting retained shares method of calculating financial interest); *Applestein v. Medivation Inc.,* C 10–00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) (same).

Analyzing net shares purchased shows how many shares a movant held at the time of the corrective disclosure at the end of the class period. When, like here, there is only one alleged corrective disclosure that comes at the end of the class period, the net shares purchased figure complements the *Dura* analysis. Here, Moss had the largest amount of retained shares as of July 20, 2021, the date of the one alleged corrective disclosure in this action. *See* ECF Nos. 7-3, 9-3, 13-2, 15-3, 18-3, 19-4, 22-4 (Moss held 7,000 shares as of July 20, 2021, Ace held 5,000, the other movants far smaller amounts and the LaForgias zero).

Accordingly, an analysis of the *Lax/Olsten* factors further shows that Moss has the largest financial interest of any movant in this action.

### C. Moss Satisfies The Rule 23 Requirements

Moss has made a *prima facie* showing of his typicality and adequacy under Rule 23. Moss is typical of other class members because he bought Piedmont shares during the class period and was harmed by the same alleged misstatements as other class members. Moss is also adequate to serve as lead plaintiff because he has no conflicts with other class members and has chosen experienced counsel as proposed lead counsel for the class. *See* ECF 14 at 5-8. Thus, Moss meets and, indeed, surpasses the typicality and adequacy requirements here. Because Moss has the largest financial interest of any qualified movant and satisfies the relevant Rule 23 requirements, he is entitled to the PSLRA's strong presumption that he is the most adequate plaintiff to lead the action.

### D. There Is No Proof To Rebut The Strong Presumption In Favor Of Appointing Moss Lead Plaintiff

To rebut Moss' lead plaintiff status, competing movants must offer "proof" that Moss does not satisfy Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). No such proof exists here. Because Moss has the largest financial interest and satisfies Rule 23, the Court can end its analysis there

and appoint Moss as lead plaintiff in this action. *See, e.g., In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (once a court determines which plaintiff has the largest stake, the court must appoint that plaintiff as lead unless it finds that he does not satisfy the typicality or adequacy requirements); *In re Cendant Corp. Litig.*, 264 F. 3d 201, 268 (3d Cir. 2001) (once the adequacy "presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class ...").  In other words, the lead plaintiff process is not a "beauty contest" – the qualified movant with the largest financial is the presumptive lead plaintiff, period.

### E.  There Are Other Compelling Reasons Not To Appoint The Other Competing Movants

Although Ace and the LaForgias lack the largest financial interest here, and thus are out of the running for appointment as lead plaintiff, they are also subject to Rule 23 impediments that would disqualify them.  Ace's Rule 23 issues are particularly glaring.  Indeed, Ace has extensive Rule 23 problems – a laundry list of prior litigations giving rise to a host of unique defenses rendering Ace atypical of other class members and unfit and inadequate to serve as lead plaintiff.

Ace and Afaghi (who is an attorney) are subject to extensive unique defenses under Rule 23.  Ace and/or Afaghi have been involved in at least 26 litigations (13 as plaintiff and 13 as defendant) (*see* Exhibit B), which will subject them to an attack for being serial litigators.[9] Additionally, Afaghi had to be compelled to attend his deposition in one matter and was eventually ordered to pay sanctions for "abuse of the discovery process" (Exhibit C).[10]  Ace and Afaghi also

---

[9] Courts have found lead plaintiff movants inadequate due to past lawsuits against them. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504–05 (S.D. Fla. 2002) (holding two public citations for violations of SEC and NASD's rules rendered proposed lead plaintiff inadequate due to concerns about potential defenses and his moral character); *Network Ass'n*, 76 F.Supp.2d at 1029 (holding presumptive lead plaintiff inadequate due to unrelated fraud investigation); *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *21-22 (S.D. Cal. Jan 4, 2004).

[10] Afaghi's refusal to sit for a deposition and being ordered to re-appear for one raises particular adequacy concerns here. *Cf. Smyth v. China Agritech, Inc.*, No. CV 13-03008-RGK (PJWx), 2013

had allegations of fraudulent conveyance brought against them (Exhibit D at 8), and it was further alleged that Afaghi falsely stated under oath that he was not a party to an action in which he was a defendant (Exhibit E at 2-4). These past acts subject Ace to numerous unique defenses which Defendants will inevitably exploit at class certification. And it is not the success of these unique defenses that is important to the Court's analysis at this stage – it is the mere fact that Ace is subject to them. In addition, in 2015 Afaghi stated that he was 72 and in "bad health" when urging a court to expedite a case he was involved in before his health further "deteriorates". *See* Exhibits F and G at 4. If Afaghi's health is still an issue this would be another reason not to appoint Ace in this action, as class actions of this kind typically take years to litigate from start to finish.

Moreover, as noted above, the issue is not whether the unique defenses concerning Ace's typicality and adequacy ultimately will be successful – the mere fact that Ace is subject to such substantial vulnerabilities strongly militates against appointing Ace to serve as lead plaintiff to represent the interests of other Piedmont investors. *See, e.g., Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 357 (S.D.N.Y. 2004) ("a defense unique to a named plaintiff" "can bar a finding of adequacy – even if that defense would not ultimately defeat that particular class representative's claim"); *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 136 n.7 (5th Cir. 2005) (the "ultimate success of [a unique] defense" is not the issue; the issue is that "the presence of this characteristic peculiar to the named plaintiff does present a sufficient question of typicality to justify a district court's decision to deny class certification"); *Beach v. Healthways, Inc.*, 3:08-0569, 2009 WL 3245393, at *5 (M.D. Tenn. Oct. 5, 2009); *Landry v. Price Waterhouse*

---

WL 12136605, at *6 (C.D. Cal. Sept. 26, 2013) (plaintiff failed to carry his burden to "affirmatively demonstrate" a class representative's "present willingness and ability to vigorously litigate" the action where class representative was "unavailable" and exhibited a "lack of engagement").

*Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("whether these defenses will be successful is of no matter.... Each of these plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market, but on non-public information that they received.... Clearly, this situation would prejudice absent class members").

In sum, all these facts create serious Rule 23 impediments demonstrating that Ace has not satisfied Rule 23's typicality and adequacy requirements.[11]

As to the LaForgias, their Piedmont trading pattern is highly unusual. They list all their purchases on July 5, 2021 and all their sales just days later on July 8, 2021. Beyond the fact that they have no financial interest in this case and, thus, cannot be appointed as lead plaintiff, they also have an atypical trading pattern that raises Rule 23 problems.

---

[11] If the Court is willing to consider Ace's motion (and it should not), then the PSLRA provides for discovery in connection with the appointment of lead plaintiff and counsel in certain circumstances, requiring "the plaintiff first demonstrate[] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). *See*, *e.g.*, *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d at 990 (granting limited discovery into investment fund); *Smajlaj v. Brocade Commc'ns Sys. Inc.,* No. C 05-02042 CRB, 2006 WL 7384107, at \*3 (discussing earlier grant of limited discovery into corporate structure of rejected investment entity movant); *In re Vonage*, 2007 WL 2683636, at \*3 (granting limited discovery of prospective lead plaintiff); *Applestein v. Medivation, Inc.*, No. C 10-00998, 2010 WL 3749406, at \*5 (N.D. Cal. Sept. 20, 2010) (allowing limited discovery into, *inter alia*, structure of prospective lead plaintiff investment fund); *Ferrari v. Impath, Inc*., No. 03 CIV. 5667, 2004 WL 1637053, at \*7 (S.D.N.Y. July 20, 2004) (noting limited discovery of prospective lead plaintiff can be warranted where a reasonable basis exists). If the Court considers Ace's motion, Moss respectfully requests limited discovery into Ace and Afaghi's past litigations and Afaghi's current health.

**CONCLUSION**

For the foregoing reasons and those given in his opening brief, Moss respectfully requests that this Court: (1) appoint Moss as lead plaintiff in the action, and all subsequently-filed related actions; and (2) approve Moss' selection of Bernstein Liebhard as lead counsel; or (3) alternatively, limited discovery of Ace and Afaghi.

Dated: October 5, 2021

Respectfully submitted,

/s/ Laurence J. Hasson
**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: lhasson@bernlieb.com

*Counsel for Moss and Proposed Lead Counsel*
*for the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Laurence J. Hasson, hereby certify that on October 5, 2021, a true and correct copy of the annexed **MEMORANDUM OF LAW IN FURTHER SUPPORT OF TERENCE MOSS'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS** was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: October 5, 2021

/s/*Laurence J. Hasson*
Laurence J. Hasson