UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

JOHN R. SKEELS, Individually and on Behalf : Civil Action No. 1:21-cv-04161-LDH-PK
of All Others Similarly Situated, :
            : CLASS ACTION
            :
           Plaintiff, : ACE ASSOCIATION LLC'S
            : MEMORANDUM OF LAW IN
    vs. : OPPOSITION TO COMPETING LEAD
            : PLAINTIFF MOTIONS
PIEDMONT LITHIUM INC., KEITH D. :
PHILLIPS, BRUCE CZACHOR, and : DATE OF SERVICE:       October 5, 2021
GREGORY SWAN, :
            :
           Defendants. :

———————————————————————— x

4828-3791-6157.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................1

II.      ARGUMENT .............................................................................................................3

        A.      The LaForgias Are Not Eligible for Appointment as Lead Plaintiff .......................3

        B.      The "Most Adequate Plaintiff" Presumption Lies in Favor of Ace Association and Cannot Be Rebutted ...................................................................7

        C.      The Remaining Movants Do Not Qualify for the PSLRA's Presumption...............8

III.      CONCLUSION..........................................................................................................9

4828-3791-6157.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ...................................................................................5

*City of Warren Police & Fire Ret. Sys v. World Wrestling Entm't, Inc.*,
   2020 WL 2614703 (S.D.N.Y. May 22, 2020) ...........................................................8

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)...........................................................................................1, 2, 3, 4

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).....................................................................................7, 9

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ................................................................................5

*Lee v. iQIYI, Inc.*,
   2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020)....................................................2, 5, 6

*Maliarov v. Eros Int'l PLC*,
   2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)...............................................................5

*Perez v. HEXO Corp.*,
   2020 WL 905753 (S.D.N.Y. Feb. 25, 2020),
   *recons. denied by* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020)..............................8

*Porzio v. Overseas Shipholding Grp.*,
   2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)................................................................5

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015).........................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ......................................................................................1

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................... *passim*

4828-3791-6157.v1

## I.    INTRODUCTION

Seven lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  Under the PSLRA, courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Ace Association is the only movant that satisfies *both* of these elements.

| Movant | Claimed Loss |
|---|---|
| ~~The LaForgias~~ | ~~$501,129~~ |
| Ace Association | $129,087 |
| Terence Moss | $51,558 |
| Feng Xiao | $37,528 |
| Susan Joorabchi | $34,388 |
| Alfred B. Wieczorek | $23,020 |
| Connie Robinson, David Robinson. | $17,956 |

While the LaForgias assert that they have suffered a greater market loss than Ace Association, they cannot be appointed lead plaintiff because their trading pattern precludes them from asserting a viable securities fraud claim in this case.  Indeed, as complete "in-and-out" traders who purchased and sold *100%* of their shares *before* any public disclosure of defendants' allegedly fraudulent conduct, the LaForgias lack loss causation, an essential element of the claim.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

For this reason, completely "in-and-out" traders like the LaForgias rarely file lead plaintiff motions because Supreme Court precedent plainly severs any connection between their claimed

---

[1]    The movants are: (i) Ace Association LLP; (ii) Anthony LaForgia and Donna LaForgia ("the LaForgias"); (iii) Terence Moss; (iv) Feng Xiao; (v) Susan Joorabchi; (vi) Alfred B. Wieczorek; and (vii) Connie Robinson and David Robinson.  *See* ECF Nos. 16, 5, 12, 10, 20, 19, 8, respectively. Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 1 -

4828-3791-6157.v1

market loss and the alleged securities fraud (and also renders them atypical and subject to a unique defense of lack of loss causation). *Id.* ***In fact, Ace Association is unaware of any district court in the last decade that has knowingly appointed a complete "in-and-out" trader as lead plaintiff in a case, like here, with a single corrective disclosure***. It is not uncommon, however, for ***would-be*** "in-and-out" traders to take precautions before the lead plaintiff deadline elapses to advance alternate loss causation theories that might enable them (and similarly situated investors) to tether their loss (or a portion thereof) to a plausible corrective disclosure. *See, e.g.*, *Lee v. iQIYI, Inc.*, 2020 WL 6146862, at *2 (E.D.N.Y. Oct. 20, 2020) (declining to appoint an ***otherwise*** total "in-and-out" trader who advanced an additional corrective disclosure in a complaint filed before the lead plaintiff deadline; finding that the need to rely on an alternate loss theory subjected the movant "to uniquely applicable defense arguments and even undermine[d] the claims of other class members who did not sell their [] shares earlier") (collecting cases). Here, however, the LaForgias inexplicably filed a lead plaintiff motion without noting any additional possible – let alone plausible –loss causation events that might have caused their harm. In fact, the LaForgias explicitly adopted the single disclosure loss causation theory advanced in the complaint, *i.e.*, the same theory that renders their loss entirely unrecoverable. Consequently, black letter law precludes the LaForgias' appointment as lead plaintiff.

Given the ineligibility of the LaForgias, the Court must look to Ace Association, the movant with the next largest financial interest in the relief sought by the class. Ace Association suffered approximately $129,087 in losses, held Piedmont Lithium Inc. shares when the truth is alleged to have emerged, was damaged by the disclosure of defendants' misconduct, and is otherwise typical of the class and adequate to represent it.

The motions of the five movants claiming significantly smaller financial interests than that of Ace Association should be denied because they cannot prove that Ace Association should not be appointed.

## II.    ARGUMENT

### A.    The LaForgias Are Not Eligible for Appointment as Lead Plaintiff

The LaForgias are ineligible for appointment as lead plaintiff because they suffered no harm from the disclosure of defendants' allegedly fraudulent misconduct. *See Dura*, 544 U.S. at 342, 345-46 (If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Specifically, the LaForgias sold *all* of their Piedmont shares on *March 8,* 2021, *months* before the complaint and the LaForgias' brief alleges that the relevant "Truth Emerge[d]" about defendants' alleged misconduct on *July 20*, 2021. *Compare* ECF No. 7-1 *with* ECF No. 6 at 3 *and* ECF No. 1 at ¶50.

The complaint in this case alleges that the truth behind defendants' alleged fraud emerged on July 20, 2021 through the publication of a *Reuters* article which exposed the regulatory issues that the Company was facing in its attempt to build a lithium mine in North Carolina. *See* ECF No. 1 at ¶¶50-51. Specifically, *Reuters* uncovered through its reporting, among other things, that "[f]ive of the seven members of the county's board of commissioners, who control zoning changes, say they may block or delay the project because Piedmont has not told them what levels of dust, noise and vibrations will occur, nor how water and air quality would be affected." *Id.* at ¶50. The complaint alleges that the disclosures in the *Reuters* article caused Company shares to precipitously decline over 20%. *Id.* at ¶51. The complaint does not identify any earlier disclosure of defendants' alleged wrongdoing. And, the LaForgias' memorandum of law in support of their motion for appointment as lead plaintiff explicitly "incorporated [] by reference" "[t]he facts set forth in the [] Complaint" and

- 3 -

4828-3791-6157.v1

reiterated the same July 20, 2021 *Reuters* article as the sole corrective disclosure.  ECF No. 6 at 2 n.1.

Consequently, the problem precluding the LaForgias' appointment as lead plaintiff is the fact that they sold ***all*** 23,762 shares of Piedmont stock by March 8, 2021, ***more than 4 months before the alleged disclosure of defendants' fraud***, and therefore lack the ability to adequately allege loss causation:

| DATES | EVENT |
|---|---|
| 3/5/2021 | The LaForgias purchased 23,762 Piedmont shares.  *See* ECF No. 7-1. |
| 3/8/2021 | The LaForgias sell ***all*** 23,762 Piedmont shares ***before*** any alleged corrective disclosure.  *See id*. |

| | |
|---|---|
| 7/20/21 | ***The only alleged corrective disclosure***.  *See* ECF No. 1 at ¶¶50-51 (complaint detailing when "The Truth Emerges"); ECF No. 6 at 2-3 (the LaForgias alleging the July 20, 2021 *Reuters* article as the sole corrective disclosure in this case).<br><br>***The LaForgias are unaffected by this corrective disclosure, as they held no Piedmont shares on 7/20/2021***. |

Because the LaForgias only held their shares for three days and liquidated them all on March 8, 2021 – well before the only corrective disclosure under the theory of the case espoused in the complaint and in all seven movants' lead plaintiff motion papers – the LaForgias are complete in-and-out traders according to their ***own*** theory of the case.

Following the Supreme Court's straightforward pronouncements in *Dura*, complete "in-and-out" traders like the LaForgias have rarely sought lead plaintiff status because they are unable to state a claim for securities fraud.  That said, courts within this District and in this Circuit have often encountered situations in which investors file follow-on complaints ***before*** the lead plaintiff motion deadline, adding a previously unalleged corrective disclosure which would enable that movant to tether their losses to a corrective disclosure.  Courts have declined to appoint such movants, finding

- 4 -

that they are unable to satisfy Rule 23 because the reliance on a novel loss causation theory is atypical of other class members and subjects such movants to unique loss causation defenses. *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."); *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at \*4 (S.D.N.Y. Apr. 5, 2016) ("Popi is the only movant whose *entire* alleged loss pre-dates the October 30, 2015 Alpha Exposure report.  As a result, Popi, unlike other movants, would be *completely* barred from recovery if no earlier disclosure date is established.") (emphasis added and in original); *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at \*3 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, the OSG Investor Group cannot make the requisite 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23.  At the very least, the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

The lead plaintiff motions that this Court referred to Magistrate Judge Orenstein in *Lee v. iQIYI, Inc.*, No. 1:20-cv-01830-LDH-JO (E.D.N.Y.), illustrate courts' reluctance to appoint as lead plaintiff an investor who is even *at risk* of being an "in-and-out" trader.  In *Lee*, Magistrate Judge Orenstein declined to appoint movant, Le Rivage, LLC, which claimed the largest financial interest, but had already liquidated all of its holdings in defendants' securities at the time of the corrective disclosure (the publication of a short seller report) alleged in the first-filed complaint.  2020 WL

6146862, at \*2.  Le Rivage attempted to salvage its candidacy by filing a complaint shortly before the lead plaintiff motion deadline with an earlier corrective disclosure and advancing a theory that the alleged fraud was revealed 18 months before the short seller report.  *Id*. at \*2.  The Court found that Le Rivage's reliance on an earlier partial disclosure "may subject Le Rivage to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their iQIYI shares earlier."  *Id.*

> Whatever the plausibility of Le Rivage's attempt to characterize its losses as flowing from its relatively unique purported ability to detect and respond to iQIYI's fraud over a year before the release of the Wolfpack Report, I conclude that its loss theory renders its claims so atypical as to preclude leadership of the putative class. Le Rivage's claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that iQIYI's alleged fraud was apparent, and caused shareholder losses, well before the Wolfpack Report.  That may subject Le Rivage to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their iQIYI shares earlier.  As a result, I conclude that Le Rivage is not the most adequate candidate to serve as lead counsel.

*Id.*

Like in *Lee*, "[a]ll of the leadership candidates *except* [the LaForgias] assert that they suffered losses after, and because of, [*Reuters'*] disclosure of [Piedmont's] allegedly fraudulent conduct.  [The LaForgias] do[] not – and cannot – claim any such loss: by the time of the Report, [the LaForgias] had long since liquidated [their] holdings in [Piedmont]."  *Id.*  However, *unlike* the movant in *Lee*, which proactively disputed the causation theory adopted by the other lead plaintiff movants and filed a complaint before the lead plaintiff motion deadline elapsed advancing an additional corrective disclosure, the LaForgias have explicitly adopted the very allegations pled in the complaint which preclude the LaForgias from claiming that their losses were proximately caused by the fraud.  *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618-19 (S.D.N.Y. 2015) (refusing to consider movant's assertion of an "ostensible partial disclosure" that "was *not*

- 6 -

included in the original Complaint" and that ran afoul of the 60-day deadline for moving for appointment as lead plaintiff) (emphasis in original).

The LaForgias' lead plaintiff motion must therefore be denied because their completely "in-and-out" trading pattern prevents them from stating a securities fraud claim based on both the complaint and their own theory of the case.

### B. The "Most Adequate Plaintiff" Presumption Lies in Favor of Ace Association and Cannot Be Rebutted

Since the LaForgias are ineligible to serve as lead plaintiff, the Court "should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Of the remaining movants, with losses of approximately $129,087, Ace Association has the greatest financial interest in the relief sought by the class and therefore is the presumptively most adequate plaintiff. *See* ECF No. 17. Ace Association is completely typical of the class and is not subject to unique defenses. Unlike the LaForgias, Ace Association held damaged shares through the July 20, 2021 corrective disclosure and is therefore not subject to unique loss causation defenses. Indeed, Ace Association satisfies the typicality requirement because, just like all other class members, it: purchased Piedmont securities during the Class Period; was adversely affected by defendants' false and misleading statements; and suffered damages thereby. There is also no question that Ace Association's interests are aligned with the interests of the class and that it otherwise satisfies the adequacy requirement of Rule 23. Ace Association provided a Declaration from its manager Ehsan P. Afaghi, a civil litigator with decades of practice experience and familiarity with overseeing counsel, demonstrating its willingness and ability to vigorously prosecute this Action on behalf of the class. *See* ECF No. 18-4.

4828-3791-6157.v1

Because Ace Association clearly has the largest financial interest and satisfies Rule 23's requirements, it is the presumptively "most adequate plaintiff."

## C.    The Remaining Movants Do Not Qualify for the PSLRA's Presumption

As their claimed losses make clear, all of the remaining movants claim smaller financial interests than Ace Association:

| REMAINING MOVANT | CLAIMED LOSS | EVIDENTIARY SHOWING OF ADEQUACY |
|---|---|---|
| Terence Moss | $51,558 | No[2] |
| Feng Xiao | $37,528 | Yes (ECF No. 13-3) |
| Susan Joorabchi | $34,388 | Yes (ECF No. 22-3) |
| *Alfred B. Wieczorek* *(filed notice of non-opposition)* (ECF No. 23) | $23,020 | Yes (ECF No. 19-7) |
| Connie Robinson, David Robinson | $17,956 | No |

*See* ECF No. 14 at 1 (Mr. Moss stating his financial interest only in terms of loss and claiming that he "lost $51,558.11 on his transaction in Piedmont securities"); ECF No. 11 at 4 (Mr. Xiao citing the *Lax-Olsten* factors and claiming that "Movant expended $205,320 purchasing 3,000 PLL shares on NASDAQ during the Class Period at the artificially inflated prices and suffered total

---

[2]    District courts around the country have increasingly required individual movants to proffer sufficient information about who they are to enable courts to determine that the movant possesses a baseline level of financial and legal sophistication sufficient to allow them to be an effective fiduciary to the entire class of investors. *See Perez v. HEXO Corp.*, 2020 WL 905753, at *2-*3 (S.D.N.Y. Feb. 25, 2020), *recons. denied by* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) (finding "vague" declaration that nonetheless provided movant's residence, education, and investment experience was not a sufficient "proxy for the movant's financial and legal sophistication and, in turn, the likelihood that the movant will play a meaningful role in limiting the 'lawyer-driven litigation that the PSLRA was designed to curtail'"); *City of Warren Police & Fire Ret. Sys v. World Wrestling Entm't, Inc.*, 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (ordering interested movants to attend telephonic hearing; declining to appoint movant whose testimony revealed that he "lacks meaningful litigation experience . . . combined with career experience that appears to have no bearing on the management of securities litigation, undermine his claim that he can 'meaningfully oversee and control the prosecution of this consolidated class action'"). Unlike the other movants, Mr. Moss and the Robinsons failed to do provide any such information.

4828-3791-6157.v1

losses of $37,528"); ECF No. 21 at 4 (Ms. Joorabchi stating her financial interest only in terms of loss and claiming that she "suffered losses of approximately $34,388"); ECF No. 9 at 4 (the Robinsons citing the *Lax-Olsten* factors and claiming that they "lost $17,956.82 in connection with their purchases of Piedmont securities").

Accordingly, the Court should not consider their motions unless the presumption in favor of appointing Ace Association as lead plaintiff is rebutted. *See Cendant*, 264 F.3d at 222 (the presumption "'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class'"). Here, because Ace Association is willing to serve and satisfies Rule 23's requirements, and the presumption in its favor has not been rebutted, the competing motions should be denied.

## III.    CONCLUSION

As complete in-and-out traders, the LaForgias suffered no harm from the disclosure of defendants' misconduct and are ineligible for appointment as lead plaintiff. In addition, the movants with smaller losses than Ace Association cannot trigger the most adequate plaintiff presumption. As such, their motions should be denied.

4828-3791-6157.v1

By contrast, Ace Association has the greatest financial interest in the relief sought by the class and has satisfied each of the PSLRA's requirements for appointment as lead plaintiff and approval of its selection of counsel.  The presumption, which lies in favor of Ace Association, cannot be rebutted.  Accordingly, Ace Association respectfully requests that the Court grant its motion.

DATED:  October 5, 2021               Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 10 -

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Additional Counsel for [Proposed] Lead Plaintiff

4828-3791-6157.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 5, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

4828-3791-6157.v1

# Mailing Information for a Case 1:21-cv-04161-LDH-PK Skeels v. Piedmont Lithium Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laurence Jesse Hasson**
  lhasson@bernlieb.com,asanchez@bernlieb.com,birkeland@bernlieb.com,ecf@bernlieb.com

- **J. Alexander Hood**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com,ecf@zlk.com,aapton@zlk.com

- **Phillip Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Thomas Livezey Laughlin**
  tlaughlin@scott-scott.com,scott-scott@ecf.courtdrive.com,efile@scott-scott.com

- **Terence Moss**
  lhasson@bernlieb.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Nathaniel A. Tarnor**
  NathanT@hbsslaw.com,sf_filings@hbsslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)