**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN R. SKEELS, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PIEDMONT LITHIUM INC., KEITH D. PHILLIPS, BRUCE CZACHOR, and GREGORY SWAN, <br><br> Defendants. | Case No.: 1:21-cv-04161-LDH <br><br> Hon. LaShann DeArcy Hall |

**ANTHONY AND DONNA LAFORGIA'S REPLY MEMORANDUM OF LAW
IN RESPONSE TO OPPOSITIONS AND IN FURTHER SUPPORT OF
THEIR MOTION FOR APPOINTMENT AS CO-LEAD PLAINTIFFS
AND APPROVAL OF SELECTION OF COUNSEL**

Lead plaintiff movants Anthony and Donna LaForgia (the "LaForgias") respectfully submit this reply memorandum of law in response to the oppositions filed by the competing lead plaintiff movants and in further support of their Motion[1] for (i) appointment as Co-Lead Plaintiffs in the above-captioned action (the "Action"); and (ii) approval of their selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the proposed Class.

## I.    PRELIMINARY STATEMENT

The LaForgias should be appointed lead plaintiff in this Action because they possess the largest financial interest of any movant and otherwise satisfy the requirements of Rule 23. No movant has provided any "proof" required by the PSLRA to rebut the presumption in favor of the LaForgias, and therefore they are entitled to being appointed Co-Lead Plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As the LaForgias provided in both their opening motion and in their opposition brief, the vast majority of courts base the financial interest analysis on losses incurred, typically on a "last-in, first-out" ("LIFO") basis.  *See In re eSpeed, Inc. Securities Litig.,* 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("more recently, courts have preferred LIFO"); *Simco v. Aegean Marine Petroleum Network Inc.*, 18-CV-4993-NRB, 2018 U.S. Dist. LEXIS 241261, at *9 (S.D.N.Y. Oct. 30, 2018) ("[i]n calculating losses, courts in this district have a "very strong preference" for the "last-in, first-out" ("LIFO") method"); *see also Takara Tr. v. Molex Inc.,* 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.") (internal citations omitted). Under this approach, the LaForgias lost almost ***four times*** more than the closest competing movant Ace Association, and almost ***ten times more*** than Moss**.**

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the LaForgias' opening memorandum and opposition briefs. *See* ECF Nos. 5 and 25.

Each of the remaining lead plaintiff movants - the LaForgias, Ace Association, and Moss - provided a loss number using the LIFO methodology.[2] Realizing that they lack the largest financial interest out of all movants, Ace Association and Moss now abandon LIFO and contend that the Court should apply the *Dura* method of calculating losses adopted by some courts under *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005) ("*Dura*"), even though this *Dura* methodology was never mentioned in their opening motions. Yet *Dura* articulated a pleading standard for claims arising under Section 10(b) of the Exchange Act, not an accounting methodology, and courts generally decline to assess financial interest with reference to the principles articulated in Dura at this stage of the litigation.  *See, e.g., Cook v. Allergan PLC*, 18 Civ. 12089 et al., 2019 U.S. Dist. LEXIS 51962, at *9 (S.D.N.Y. Mar. 21, 2019) (declining to undertake Dura analysis with respect to damages at lead plaintiff appointment stage, finding its "impact . . . at best uncertain, and so should be discounted"); *Blitz v. AgFeed Indus.*, Case No. 3:11-0992, 2012 U.S. Dist. LEXIS 49849, at *12 (M.D. Tenn. Apr. 10, 2012). Further, Courts routinely reject last minute loss calculation shifts, like here, as gamesmanship. *See, e.g., Cook,* 2019 U.S. Dist. LEXIS 51962, at *9 (the fact that a movant that initially presented its losses under LIFO and "alter[ed] its calculation [to *Dura*] when it learned that someone else had a larger loss  – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted")

Even more concerning, is that both Ace Association and Moss now seek to mislead the Court in their application of the supposed *Dura* methodology. Ace Association claims that *Dura*

---

[2] Movant Moss' loss chart, ECF No. 15-3, specifically states "FIFO/LIFO Losses". Ace Association's loss chart does not specify which methodology was used, but when the LaForgias' counsel calculated losses using the standard LIFO calculation, they achieved the same loss number Ace Association claimed - $129,087.82.

should apply to the LaForgias and that none of their losses should be considered, yet it fails to recalculate its own loss under *Dura*. Rather, Ace Association still contends in its opposition that it has a substantial loss of $129,087 – yet less than a quarter of its losses would count under the same *Dura* methodology, Movant Moss' use of *Dura* raises similar issues as he claimed a loss of $51,558 FIFO/LIFO in his opening motion and now on opposition is attempting to claim a larger loss of $133,669, which is only possible if he improperly excludes any intra-class period gains from his total loss. This is likely only due to the fact that if he calculated his loss by excluding intra-class period losses and offsetting any intra-class period gains, he would still have a lower loss than Ace Association.

Importantly, none of the competing movants even attempt to argue that the LaForgias are inadequate or atypical. As previously demonstrated, the LaForgias are experienced investors who are more than capable of overseeing counsel in this class action. The LaForgias are a married couple who resides in Rutherford, New Jersey. Declaration, ¶2. Collectively, they have over 65 years of investing experience. *Id.* Moreover, prior to retirement, Mr. LaForgia was the vice president of Ceres Atlantic Terminals, and Ms. LaForgia is currently the executive secretary to the president of Citroil Enterprises Inc. *Id.* Having triggered the presumption of "most adequate plaintiff" in their favor, and without any "proof" of inadequacy or atypicality from the competing movants, the LaForgias should be appointed lead plaintiff.

## II.    ARGUMENT

### A.    The LaForgias Possess the Largest Financial Interest

The LaForgias have the largest financial interest of any competing movant in the Action by **over $372,000, or more than three times.** Courts in this District, Circuit, and throughout the county uniformly acknowledge that approximate loss suffered is the most important factor when

3

assessing financial interest under the PSLRA. *See Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *14 (E.D.N.Y. Aug. 21, 2018) ("the largest loss is the critical ingredient in determining the largest financial interest" (internal quotations omitted);) *Omdahl v. Farfetch Ltd.,* 19-cv-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *7 (S.D.N.Y. June 10, 2020) ("The last factor, financial loss, is the most important..."). When assessing financial interest, LIFO is the widely accepted method. *See Bo Young Cha v. Kinross Gold Corp.,* No. 12 Civ. 1203(PAE), 2012 U.S. Dist. LEXIS 79288, at *9 (S.D.N.Y.  May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO") (citations omitted).

| Movant | Claimed Loss |
|---|---|
| **Anthony and Donna LaForgia** | **$501,129.26** |
| Ace Association LLC | $129,087.82 |
| Terence Moss | $51,558.11 |
| ~~Feng Xiao~~ | ~~$37,528.00~~ |
| ~~Susan Joorabchi~~ | ~~$34,388.19~~ |
| ~~Alfred B. Wieczorek~~ | ~~$23,020.00~~ |
| ~~Connie and David Robinson~~ | ~~$17,956.82~~ |

As explained in their opening motion and opposition, when applying a LIFO methodology, the LaForgias' approximate losses, the most important factor, are greater than any of the other movants.

**B.      Ace Association and Moss's Change in Loss Calculation Strategy is Unfounded and Should be Disregarded**

Disregarding the well-known authority of using LIFO to determine largest financial interest, Ace Association and Moss now ask the Court to apply a loss causation methodology premised on *Dura*, although both Ace Association and Moss failed to argue this method in their opening papers. Many courts decline to apply a *Dura* calculation at the lead plaintiff stage because doing so requires the court to prematurely delve into a merits analysis. *See, e.g., Cook*, 2019 U.S. Dist. LEXIS 51962, at *7-8 (declining to conduct a "*Dura*" analysis to determine financial interest at the lead plaintiff stage); *AgFeed*, 2012 U.S. Dist. LEXIS 49849, at *12, (noting that *Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *Owens v. FirstEnergy Corp.*, No. 2:20-cv-03785, 2020 U.S. Dist. LEXIS 219573, *23 (S.D. Ohio Nov. 23, 2020) (same). This sudden shift in strategy should be met with skepticism by the Court. It is important to note at the outset that the calculation of losses is "a complicated and uncertain process, typically involving conflicting expert opinion" that is an improper inquiry at this early stage in the litigation in the lead plaintiff context. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

At this early juncture in the proceedings, courts compare financial interest based on the approximate loss suffered—without engaging in the complicated task of determining movant's actual damages. *See McGeev. Am. Oriental Bioengineering, Inc.*, 2:12-CV-5476-SVW-SH; 2:12-CV-5789-SVW-SH, 2012 U.S. Dist. LEXIS 196011, at *9 (C.D. Cal. Oct. 16, 2012) ("LIFO is the most appropriate technique for approximating which investor suffered the greatest losses because of Defendants' wrongdoing"). Under this straightforward application, the LaFrogias have the largest approximate loss and therefore should be appointed as co-lead plaintiffs. Here, Ace Association and Moss contend thar the LaForgias are ineligible for appointment because having

5

sold all their Peidmont stock prior to the end of the Class Period, they purportedly lack a recoverable loss in this litigation pursuant to the loss-causation methodology articulated by the Supreme Court in *Dura*. *See* ECF Nos. 29 at 1-2, 28 at 2. Yet, Ace Association and Moss' argument fundamentally misconstrues the significance of *Dura* because Courts generally do not apply a loss-causation methodology relying on *Dura* principles at the Lead Plaintiff appointment stage in securities class actions. See, e.g., *Blitz*, 2012 U.S. Dist. LEXIS 49849, at *12 (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *Richardson v. TVIA, Inc.,* No. C-06-06304 RMW, No. C-06-07307 RMW, 2007 U.S. Dist. LEXIS 28406, at *20-21 (N.D. Cal. Apr. 16, 2007) (rejecting competing lead plaintiff movant's attempt to reduce presumptive lead plaintiff's losses pursuant to *Dura*); *In re Watchguard Sec. Litig.,* Master File No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14-*15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.,* 256 F.R.D. 620 (E.D. Wis. 2009)); *Cook*, 2019 U.S. Dist. LEXIS 51962, at *9.

In fact, *Dura* does not provide an accounting methodology to be used, but rather it simply articulates a pleading standard for securities fraud claims alleging violations of Section 10(b) of the Exchange Act—namely, that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*, 544 U.S. at 346. The concept of not applying *Dura* at the lead plaintiff stage was succinctly described by the Court in *Watchguard*:

> [The movant's] citation to the discussion of securities class action damages in *Dura* . . . is inapposite.  The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation.  The Supreme Court recognized, as does this court, that numerous factors may affect the price of a security.  The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Watchguard*. 2005 U.S. Dist. LEXIS 40923, at 15 n.6.

Moreover, the *Dura* argument raised by Ace Association and Moss is purely self-serving, which is even more apparent by their lack of transparency to the Court when assessing their own losses under the same loss methodology. Here, Ace Association claims that the LaForgias have no loss and that they are complete in and out traders. Yet, Ace Association purposely did not recalculate its own loss under *Dura*, and claims the same $129,087 loss, even though it sold all but 5,000 of its 23,000 shares prior to any corrective disclosure. Under this same methodology, Ace Association would have less than a quarter of the losses it claims to represent, further evidencing its gamesmanship. Likewise, movant Moss also asserts this *Dura* methodology on opposition, even though he clearly calculated his loss in his opening motion using LIFO, and is now trying to claim a loss of $133,669, more than double of what his opening motion claimed. *See* ECF No. 15-3 (Moss loss chart). Further, Moss' inflated loss on opposition is only achievable by incorrectly excluding intra-class period gains. *See Abrahamson v. Fleschner,* 568 F.2d 862, 878 (2d Cir. 1977) (ordinarily "a plaintiff may [not] recover for losses, but ignore his profits, where both result from a single wrong" in a suit for violation of securities laws). The LaForgias believe that Moss took the approach of excluding his intra-class period gains, rather than offsetting them, for both himself and Ace Association on opposition, which was purely done so that he could assert a larger loss than any other movant. Had Moss offset his gains and excluded intra-class period losses, he would still have a lower loss than Ace Association.

The Court should reject Ace Association and Moss' eleventh-hour shift in strategy as a transparent ploy to find any way to assert a larger financial interest that the LaForgias. Courts routinely reject last minute loss calculation shifts, like here, as gamesmanship. *See, e.g., Cook,* 2019 U.S. Dist. LEXIS 51962, at 8-9 (the fact that a movant that initially presented its losses under

LIFO and "alter[ed] its calculation [to *Dura*] when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted"); *Bodri v. Gopro, Inc.,* Case Nos. 16-cv-00232-JST, 16-cv-00338-JST, 16-cv-00598-JST, 16-cv-00845-JST, 2016 U.S. Dist. LEXIS 57559, at *11-12 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology[.] This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology."); *Galmi v. Teva Pharm. Indus.,* 302 F. Supp. 3d 485, 499 (D. Conn. 2017) (courts need to be "wary of eleventh-hour shifts in strategy" and "refuse[] to allow parties to change their position on the appropriate methodology for measuring total financial interest."). *Maliarov v. Eros International PLC,* Nos, 15-CV-8956 (AJN), 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082, at *12 (S.D.N.Y. Apr. 5, 2016) ("The specter of gamesmanship on these facts causes the Court to question whether Popi will 'fairly and adequately protect the interests of the class.").

Ace Association and Moss have failed to provide the Court with any real reason of why they should be allowed to depart from the standard LIFO loss methodology used by every remaining movant in their opening motion. Further, "even if defendants were to subject plaintiffs like [the LaForgias] to a challenge on the inability to prove loss causation, such a defense surely cannot be described as unique." *Weiss v. Friedman, Billings, Ramsey Grp., Inc.,* No. 05-CV-04617 (RJH), 05-CV-04706 (RJH), 05-CV-04771 (RJH), 05-CV-04795 (RJH), 05-CV-04818 (RJH), 05-CV-04824 (RJH), 05-CV-04851 (RJH), 05-CV-04877 (RJH), 2006 U.S. Dist. LEXIS 3028, at *19 (S.D.N.Y. Jan. 25, 2006); *see also Montoya v. Mamma.com Inc.,* No. 05 Civ. 2313(HB), 05 Civ.

2483(HB), 05 Civ. 2534(HB), 05 Civ. 2625(HB), 05 Civ. 2719(HB), 05 Civ. 3444(HB), 2005 U.S. Dist. LEXIS 10224, at *7 (S.D.N.Y. May 31, 2005) ("at least at this stage, 'in and out purchasers' do not appear to be 'unique' and, thus, do not 'render such plaintiff incapable of adequately representing the class.'") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)).

## III.    THE LAFORGIAS OTHERWISE SATISFY RULE 23

Aside from the attack on their purchases, no opposing movant has challenged the LaForgias' typicality or adequacy under the PSLRA and Rule 23 – nor could they. The LaForgias clearly satisfy the typicality and adequacy requirements of Rule 23 which, coupled with having the largest financial interest, necessitates their appointment as co-lead plaintiffs.

The LaForgias satisfy the typicality requirements because they (1) purchased Peidmont securities during the Class period; (2) at prices artificially inflated by the false and misleading statements issued by Defendants; and (3) suffered significant damages as a result. Therefore, the LaForgias' claims are typical to those of the other Class members who sustained damages through their purchases of Piedmont securities during the Class Period.

The LaForgias will also adequately protect the interests of the Class. The interests of the LaForgias and the Class are closely aligned as both have suffered damages as a result of Defendants' false statements and/or omissions.  Additionally, the LaForgias, by virtue of suffering the most losses of any movant before the Court, have a significant interest in vigorously pursuing this Action on behalf of the Class.  Moreover, there are no facts that indicate that there is a conflict of interest between the LaForgias and the absentee Class members. Finally, the LaForgias have provided the Court with background information about themselves so that the Court may rest assured that they are sophisticated, educated shareholders who will diligently oversee this litigation. *See* ECF No. 7-4, LaForgias Declaration.

9

## IV.   CONCLUSION

For all of the foregoing reasons, the LaForgias respectfully request that the Court grant their Motion and enter an Order: (1) appointing Anthony and Donna LaForgia as Co-Lead Plaintiffs, (2) approving their selection of Levi & Korsinsky as Lead Counsel for the Class, (3) granting such other relief as the Court may deem just and proper, and (4) denying all other competing motions.


Dated: October 12, 2021                    Respectfully Submitted,


                                  **LEVI & KORSINSKY, LLP**

                                  */s/ Shannon L. Hopkins*
                                  Shannon L. Hopkins (SH-1887)
                                  55 Broadway, 10th Floor
                                  New York, NY 10006
                                  Tel: (212) 363-7500
                                  Fax: (212) 363-7171
                                  Email: shopkins@zlk.com


                                  *Lead Counsel for Anthony and Donna*
                                  *LaForgia and [Proposed] Lead Counsel for*
                                  *the Class*

10