UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

JOHN R. SKEELS, Individually and on Behalf :    Civil Action No. 1:21-cv-04161-LDH-PK
of All Others Similarly Situated,    :

                :    CLASS ACTION

          Plaintiff,    :

                :    REPLY MEMORANDUM IN FURTHER

    vs.                :    SUPPORT OF ACE ASSOCIATION LLC'S
                :    LEAD PLAINTIFF MOTION

PIEDMONT LITHIUM INC., KEITH D.    :
PHILLIPS, BRUCE CZACHOR, and       :    **DATE OF SERVICE October 12, 2021**
GREGORY SWAN,            :

                :

         Defendants.    :

———————————————————— x

4830-9835-8270.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT.......................................................................................................2

       A.      Ace Association Has the Largest Loss of Any Qualified Movant Under Both the Last-In, First-Out and *Dura* Methodologies .............................................2

       B.      The Presumption in Ace Association's Favor Has Not Been Rebutted...................6

III.    CONCLUSION....................................................................................................10

4830-9835-8270.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrahamson v. Fleschner*,
    568 F.2d 862 (2d Cir. 1977).................................................................................1, 3

*Atanasio v. Tenaris S.A.*,
    331 F.R.D. 21 (E.D.N.Y. 2019) .............................................................................5

*Baughman v. Pall Corp.*,
    250 F.R.D. 121 (E.D.N.Y. 2008) ...........................................................................5

*Bo Young Cha v. Kinross Gold Corp.*,
    2012 WL 2025850 (S.D.N.Y. May 31, 2012) .........................................................4

*Bodri v. GoPro, Inc.*,
    2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ........................................................3

*Chupa v. Armstrong Flooring, Inc.*,
    2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)..........................................................8

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
    2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)..............................................................4

*City of Warren Police & Fire Ret. Sys.*
    *v. World Wrestling Ent., Inc.*,
    2020 WL 2614703 (S.D.N.Y. May 22, 2020) .........................................................9

*Constance Sczesny Tr. v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................6

*Glavan v. Revolution Lighting Techs., Inc.*,
    2019 WL 3406582 (S.D.N.Y. July 29, 2019) .........................................................5

*Gutman v. Sillerman*,
    2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) .........................................................5

*In re Bally Total Fitness Sec. Litig.*,
    2005 WL 627960 (N.D. Ill. Mar. 15, 2005).............................................................2

*In re Boeing Co. Aircraft Sec. Litig.*,
    2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)
    *recons. denied by* 2020 WL 476658
    (N.D. Ill. Jan. 28, 2020) .........................................................................................10

4830-9835-8270.v1

**Page**

*In re Comverse Tech., Inc. Sec. Litig.*,
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)
  *adhered to on recons.*, 2008 WL 820015
  (E.D.N.Y. Mar. 25, 2008) ...................................................................................................4

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ...........................................................................................3

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................5

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................................8

*In re Surebeam Corp. Sec. Litig.*,
  2004 WL 5159061 (S.D. Cal. Jan 5, 2004) ..........................................................................8

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................10

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
  2021 WL 71433 (C.D. Cal. Jan. 7, 2021) ............................................................................4

*Karp v. Diebold Nixdorf, Inc.*,
  2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019)
  *adhered to on recons.*, 2019 WL 6619351
  (S.D.N.Y. Dec. 5, 2019)........................................................................................................9

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019)...............................................................................4, 5

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
  2020 WL 3396660 (S.D. Ohio June 19, 2020) ....................................................................2

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
  2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) .......................................................................5

*Lucas v. U.S. Oil Fund, LP*,
  2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020)......................................................................2

*Mullins v. AZZ, Inc.*,
  2018 WL 7504312 (N.D. Tex. Aug. 9, 2018)........................................................................6

4830-9835-8270.v1

**Page**

*Murphy v. JBS S.A.*,
  2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017) ..................................................................6

*Nakamura v. BRF S.A.*,
  2018 WL 3217412 (S.D.N.Y. July 2, 2018) ...................................................................5

*Newman v. Eagle Bldg. Techs.*,
  209 F.R.D. 499 (S.D. Fla. 2002) ...................................................................................8

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................................................................3

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ..................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*
  *v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................8

*R.I. Laborers' Pension Fund v. FedEx Corp.*,
  2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019) ................................................................5

*Reimer v. Ambac Fin. Grp., Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................................................10

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................5, 6

*Rosi v. Alcaris Therapeutics, Inc.*,
  2019 WL 5778445 (S.D.N.Y. Nov. 6, 2019) ..................................................................5

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015) ..............................................................................4

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  2019 WL 494129 (M.D. Tenn. Jan. 9, 2019) ..............................................................6, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ............................................................................6

*Workman v. Namaste Techs., Inc.*,
  2019 WL 280948 (S.D.N.Y. Jan. 22, 2019) ...................................................................5

4830-9835-8270.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(iii) ..................................................................................................1
§78u-4(a)(3)(B)(iii)(II) ............................................................................................6
§78u-4(a)(3)(B)(iv) ................................................................................................10

Federal Rule of Civil Procedure
Rule 23 ................................................................................................................1, 9

4830-9835-8270.v1

## I.    INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs district courts to adopt a presumption that the applicant with the largest financial interest in the relief sought by the class that also satisfies the requirements of Federal Rule of Civil Procedure 23 is the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii). As set forth in Ace Association LLC's opposition brief, Anthony LaForgia and Donna LaForgia cannot be appointed as lead plaintiff because they are subject to the unique defense that they lack loss causation and therefore cannot assert a viable claim for securities fraud. *See* ECF No. 29 at 3-7.

Of the two other remaining movants, only Ace Association satisfies the PSLRA's requirements. Indeed, under the loss calculation methodologies used in the case law set forth by the competing movants, and the so-called *Dura* methodology Mr. Moss advocates is required in his opposition brief, Ace Association has the largest financial interest:

| **Movant** | **LIFO Loss** | ***"Dura" Loss*** |
|---|---|---|
| Ace Association | $129,087 | $63,600 |
| Terence Moss | $51,558 | $51,558 |

Notably, while Mr. Moss advocates a novel *Dura* loss figure that (conveniently) elevates his own financial interest above Ace Association's financial interest, he neglects to inform the Court that *his calculation excludes over $80,000 in gains that he benefitted from during the Class Period*. To Ace Association's counsel's knowledge, no court has *ever* adopted such a misleading methodology that ignores trading gains (and Moss cites to no such case). For good reason: it runs directly contrary to the Second Circuit's pronouncement that ordinarily "a plaintiff may [not] recover for losses, but ignore his profits, where both result from a single wrong" in a suit for violation of securities laws. *Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977).

Unable to credibly dispute that Ace Association has the largest financial interest in this action, Mr. Moss contends that Ehsan P. Afaghi – Ace Association's manager – is a feeble 72-year old in "bad health" who should not be appointed to lead a case that could "take[] years to litigate." ECF No. 28 at 4. Nonsense; the movant here is Ace Association – not Mr. Afaghi – an ageless entity

- 1 -

4830-9835-8270.v1

with other officers besides Afaghi who could readily step into his shoes at any point should the need arise.

Ace Association's motion for appointment as lead plaintiff should be granted.

## II.   ARGUMENT

### A.   Ace Association Has the Largest Loss of Any Qualified Movant Under Both the Last-In, First-Out and *Dura* Methodologies

The first issue before the Court is which movant possesses the largest financial interest. Based on the metric each movant reported in its motion (before either movant was aware of any competing motions) – LIFO loss – Mr. Moss agrees that Ace Association suffered more than double the loss ($129,087) that he suffered ($51,558). Because of this inconvenient truth, Moss switches gears in his opposition brief and urges the Court to consider anything ***but*** the movants' original LIFO losses in determining which possesses the largest financial interest, which not-so-coincidentally supports his ability to claim a greater interest if a number of other factors are considered. *See* ECF No. 28 at 5-15.[1] Moss's about-face is disingenuous considering his motion stated his financial interest ***only*** in terms of loss and claimed that he "lost $51,558.11 on his transaction in Piedmont securities." ECF No. 14 at 1.

As a preliminary matter, Mr. Moss's opposition argument should be summarily rejected as both gamesmanship (at best) and waived (at worst). *See Lucas v. U.S. Oil Fund, LP*, 2020 WL 5549719, at *4 (S.D.N.Y. Sept. 16, 2020) (the fact that movant adopted a novel loss calculation in an opposition brief "only after learning that [competing movant's] losses exceeded its own, is all the

---

[1]   *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("Not surprisingly, some of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period, citing *Lax* . . . . It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all . . . . We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."). Unless otherwise noted herein, all emphasis is added and citations are omitted.

more reason to reject [it]").[2]  More to the point, if Moss sincerely believed that his revised loss

calculation of ***$133,669*** – a 250% increase over what he initially claimed ($51,558) – was credible,

why did he originally provide a ***lower*** loss calculation to the Court using a method that he now

claims is a "highly misleading picture of financial interest?"  ECF No. 28 at 7.  The answer is clear:

Moss "shift[ed] [his] argument only after [Ace Association] came forward with larger LIFO losses."

*Nicolow v. Hewlett Packard Co*., 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).  Accordingly,

Moss's attempt to switch loss metrics only after seeing the competing movants' losses should be

rejected.

Moreover, Mr. Moss's novel loss methodology "analysis" – which aims to increase his

claimed financial interest from $51,558 to $133,669 by ignoring over $80,000 in profits that Moss

realized on his sales of Piedmont Lithium Inc. stock at fraud-inflated prices during the Class Period –

should be rejected as inconsistent with the Second Circuit's pronouncement that ordinarily "a

plaintiff may [not] recover for losses, but ignore his profits, where both result from a single wrong"

in a suit for violation of securities laws.  *Abrahamson*, 568 F.2d at 878.  Ignoring intra-Class Period

gains would also be inconsistent with one of the perceived benefits of the LIFO methodology to

"offset[] 'gains' that were attained through the sale of stock during the class period." *In re eSpeed,*

*Inc. Sec. Litig*., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).

Consistent with these principles, it is unsurprising that Mr. Moss's case law does not actually

support removing ***gains*** from a financial interest calculation, but merely stands for the

uncontroversial principle that some courts require movants to adjust their LIFO calculations to

remove any ***losses*** arising from securities that were bought and sold before a defendant's corrective

---

[2]      *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660, at *6 (S.D.
Ohio June 19, 2020) (noting that courts disapprove of "vacillating advocacy . . . as it pertains to
calculating losses for appointment as lead plaintiff," and applying "method of accounting which both
parties adopted in their initial motions"); *Bodri v. GoPro, Inc*., 2016 WL 1718217, at *3 (N.D. Cal.
Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of
how their respective motions would fare . . ., did [one movant] argue that the more appropriate
measure of greatest financial stake was the 'retained shares' methodology. . . .  This fact alone
counsels in favor of adopting the LIFO methodology, as opposed to the retained shares
methodology.").

4830-9835-8270.v1

disclosure.[3] Accordingly under the very *Dura* methodology used in the cases cited by Moss (which exclude all *losses* incurred before a corrective disclosure), Ace Association's *Dura* losses of $63,600 still exceed Moss's losses of $51,558. Fatally, ***Moss concedes as much***. *See* ECF No. 28 at 8 n.6. Moss's illogical leap, suggesting that courts in this district allow movants to belatedly submit revised loss calculations that remove any *gains* that those movants realized as a result of selling shares at fraud inflated prices, goes at least one step too far. ***Indeed, no court to Moss's counsel's knowledge has endorsed such an approach***. *See, e.g.*, *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (declining to adopt a novel application of a *Dura*-based loss calculation when the movant advancing it "cites to no authority within this circuit that uses his version of *Dura* loss calculation"; finding that it is telling that movant "himself raised the *Dura* loss calculation only in opposition after finding [another class member] had a greater LIFO loss").[4]

Facing a clear (but undesired) outcome under any loss calculation methodology other than his tortured application of a "*Dura* loss but without counting my profits" methodology, Mr. Moss jettisons loss entirely and urges the Court to disregard Ace Association's triply-larger losses by looking instead to Moss's narrow advantage in shares purchased and net expenditures to determine

---

[3]     *See*, *e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) ("under *Dura* . . . any *losses* [a plaintiff] . . . incurred before [a defendant's] misconduct was . . . disclosed . . . *are not recoverable*, because those losses cannot be proximately linked to the misconduct at issue"), *adhered to on recons.*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) ("following the Supreme Court's decision in *Dura* . . . , courts in this district ordinarily *will not include losses* that occurred prior to the first corrective disclosure of the alleged fraudulent misrepresentation made by the defendant"); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) ("[T]he recent trend in this district is for movants to adjust their LIFO calculations *to remove any losses* arising from securities that were bought and sold *before* a defendant's corrective disclosure.") (emphasis added and in original); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases).

[4]     Mr. Moss's citation to *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *4 (S.D.N.Y. May 31, 2012), is misguided as it supports the straightforward application of the LIFO methodology under which Ace Association's loss ($129,087) far exceeds Moss's loss ($51,558). *See id.* at *3 ("The courts that have adopted LIFO over FIFO have given several reasons for doing so. First, FIFO has the potential to exaggerate losses, by failing to take into account gains that an investor might have made on the stock that were attributable to its artificial inflation as a result of the alleged fraud; *LIFO, on the other hand, takes into account such gains*.").

- 4 -

which movant possesses the "largest financial interest." ECF No. 28 at 9-11. Gamesmanship aside, Moss's modified approach is flawed because the ***overwhelming*** majority of cases in this District and Circuit hold that loss is the outcome determinative factor that outweighs net funds expended and net shares purchased – which explains why that is the factor relied on by Moss in his opening motion when initially asserting his financial interest. *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27-28 (E.D.N.Y. 2019) ("The fourth factor, the approximate losses suffered, is considered by most courts . . . [to be] 'the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'"); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 120 (E.D.N.Y. 2012) (relying on "'loss [as] the critical ingredient in determining the largest financial interest [which] outweighs net shares purchased and net expenditures'").[5] When selecting the movant with the largest financial interest, courts find that even marginally greater losses outweigh meaningful advantages in any other (or all three) *Olsten-Lax* factors.[6]

---

[5] *Rosi v. Alcaris Therapeutics, Inc.*, 2019 WL 5778445, at *3 (S.D.N.Y. Nov. 6, 2019) ("The fourth factor, the largest loss, is considered by most courts to be the 'critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'") (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478-79 (S.D.N.Y. 2011)); *R.I. Laborers' Pension Fund v. FedEx Corp.*, 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019) (same); *Glavan v. Revolution Lighting Techs., Inc.*, 2019 WL 3406582, at *3 (S.D.N.Y. July 29, 2019) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (same); *Gutman v. Sillerman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (same); *Kniffin*, 379 F. Supp. 3d at 263 ("The fourth factor – approximate losses – is the most important."); *Workman v. Namaste Techs., Inc.*, 2019 WL 280948, at *2 (S.D.N.Y. Jan. 22, 2019) (same); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *2 (S.D.N.Y. July 2, 2018) (same).

[6] *See, e.g.*, *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019) ("Hulaj's argument that I should prioritize the retained shares factor is particularly unpersuasive given the facts of the instant case. The first three factors are roughly equal between movants Hulaj and National Elevator, but the losses suffered by National Elevator are more than three times Hulaj's losses."); *Glavan*, 2019 WL 3406582, at *3 (movant with 301,286 net shares purchased and claimed losses of $830,428.82 held to have smaller financial interest than movant with 88,060 net shares purchased and claimed losses of $1,245,936); *Atanasio*, 331 F.R.D. at 27 ("Under the *Olsten* criteria, Sanders has the largest financial interest. Although City of Warren purchased a greater number of total and net shares during the class period and expended a greater amount of net funds, Sanders has a greater loss by approximately $27,000. The approximate loss is the most important factor."); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008) ("While the first two factors favor and the third factor favors Bennett, the fourth factor in this case – the most important factor – strongly favors Bennett. Because Bennett has

- 5 -

Accordingly, there is no basis in law or fact to find that Mr. Moss has a larger financial interest than Ace Association, no matter which new metric Moss belatedly urges the Court to adopt.

**B.     The Presumption in Ace Association's Favor Has Not Been Rebutted**

Pursuant to the PSLRA, Ace Association's presumptive status can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). "'*[E]xacting proof' is needed to rebut the presumption*." *Murphy v. JBS S.A.*, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017). Indeed, "conclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptively most adequate plaintiff] would be uniquely subject." *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004). "Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses.'" *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018). Mr. Moss has failed to offer such proof here.

Recognizing that his attempt to dispute Ace Association's larger financial interest is unlikely to succeed, Mr. Moss attempts to rebut the presumption in Ace Association's favor by arguing that Mr. Afaghi – an attorney who is Ace Association's manager and designee to oversee this litigation – is subject to a unique defense because he is a "serial litigant," and transparently suggesting that Afaghi is too old to serve as a lead plaintiff. Neither argument constitutes the requisite level of proof.

_____

suffered greater approximate losses, he has the largest financial interest in the relief sought by the Class as determined by the *Lax/Olsten* test."); *Richman*, 274 F.R.D. at 478-79 ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures."); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *3 (M.D. Tenn. Jan. 9, 2019) (appointing movant with the largest loss, despite a competing movant's larger shares purchased (both total and net) and greater net expenditure).

- 6 -

4830-9835-8270.v1

As a preliminary matter, Mr. Moss improperly and inappropriately conflates Mr. Afaghi with the movant here, Ace Association (a limited liability company). *See* ECF No. 24 at 5. As set forth in his sworn Declaration, Afaghi is a civil litigator with decades of experience practicing law, whereas Ace Association is the investment company of Afaghi's family, a company that he is currently the manager of and which was previously managed by other family members. *See* ECF No. 18-4. The legal distinction between them – Afaghi as an individual and not a movant, and Ace Association, as an entity and movant – renders Moss's entire argument irrelevant and moot.

Nor does Mr. Moss credibly articulate why Mr. Afaghi's involvement in 26 litigations – *only two of which appear to involve Ace Association* – renders Ace Association a disqualifying "serial litigant." Moss likewise does not explain why Afaghi's age or previous health issues (which are no longer present) impact Ace Association's candidacy. To remove any doubt, Afaghi's counsel confirms that there are other Ace Association representatives, who are (and have been from the commencement of this suit) authorized, ready, willing, and able to oversee this litigation on Ace Association's behalf. Indeed, a primary benefit of appointing as lead plaintiff an institutional investor or investment company like Ace Association *is* the continuing nature of a corporate entity.

Mr. Moss's contention that the mere involvement of Mr. Afaghi or Ace Association in litigation undermines its adequacy lacks any legal support and is not rooted in common sense. Tellingly, Moss fails to articulate any theory as to how Ace Association and Afaghi's supposed status as named parties to a couple dozen routine civil matters renders them "serial litigants," much less how that label constitutes a "unique defense" to the class's securities fraud claims. The closest Moss comes is by insinuating that disqualification is warranted based on the following facts, *all of which occurred in the same civil matter in which Ace Association and Afaghi were the prevailing parties*: (1) Afaghi and Ace Association received a discovery violation and corresponding $900 discovery sanction for overzealously defending against Afaghi's deposition; (2) Afaghi and Ace Association had civil claims of fraudulent conveyance *alleged* against them (which were later dismissed); and (3) an opposing party accused Afaghi of lying under oath. These facts are a far cry from the situations identified in Moss's cases in which lead plaintiff movants were arrested or found

- 7 -

4830-9835-8270.v1

guilty of very serious violations. *See* ECF No. 28 at 13 n.9.[7]

That said, and as Mr. Moss's counsel is aware, even extremely serious criminal convictions do not necessarily render a movant subject to "unique defenses." Indeed, only recently, Moss's counsel successfully argued that a gentleman who pled guilty, was convicted, and sentenced to 97 months in federal prison for robbing a bank with a bomb was a perfectly suitable PSLRA lead plaintiff. *See Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420, at *3 (C.D. Cal. Mar. 2, 2020). The court agreed with Moss's counsel, finding that "[c]ourts ***only*** disqualify a proposed lead plaintiff because of his prior criminal history if his prior convictions are ***related*** to the claims they seek to prosecute on behalf of the proposed class." *Id.* (emphasis in original) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) ("[E]ven if the violations in question had been proven, they do not appear to represent the degree of serious misconduct that would require Empire's candidacy to be rejected at this stage, particularly . . . in the absence of any specific connection between the types of violations claimed and the execution fraud alleged here."}) (citing cases). Given the law on this issue that Moss's counsel helped develop, it is meritless to suggest that Mr. Afaghi's involvement and experience in contentious civil litigation (in which he prevailed) is anything other than an ***asset*** to the class.

Mr. Moss's last ditch effort to displace Ace Association as the lead plaintiff appears to be

---

[7]     *See id.*; *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (court disqualified movant who was definitively found to have "violat[ed] SEC and NASD rules in two instances," finding that "[t]he citation by the SEC, in particular, was not a minor slap on the wrist. Mr. Kashner had his supervisory license revoked, a major punishment. Having been found by the SEC and the NASD to have violated certain securities laws, Mr. Kashner may be subject to unique defenses that might imperil certification of a class in this case."); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (disqualifying lead plaintiff movant when the record showed that the entity was currently "under investigation for criminal fraud violations of the laws in Belgium, that the authorities have conducted 'raids' on the Belgium bank as part of its criminal fraud investigation, and that the CEO of KB Luxembourg has already been arrested for tax evasion, fraud, money laundering, conspiracy and consorting with criminal elements"); *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan 5, 2004) (disqualifying movant who "had his National Association of Securities Dealers ('NASD') membership terminated" and who "is subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments").

little more than a thinly veiled insinuation that Mr. Afaghi is too old to serve as lead plaintiff. *See* ECF No. 28 at 14 ("In addition, in 2015 Afaghi stated that he was 72 and in 'bad health' when urging a court to expedite a case he was involved in before his health further 'deteriorates.' . . . If Afaghi's health is still an issue this would be another reason not to appoint Ace in this action, as class actions of this kind typically take years to litigate from start to finish."). Aside from the aforementioned fact that Afaghi's prior health issues – even if still relevant – have little bearing on Ace Association's ability, willingness, or readiness to lead the case, Afaghi's health issue from 2015 is no longer present and he is in overall very good health.[8]

Aside from rank speculation and remote innuendo, Mr. Moss offers no facts, let alone proof, sufficient to rebut the statutory presumption in favor of appointing Ace Association as lead plaintiff.

---

[8] While Ace Association and Mr. Afaghi have provided the Court and competing movants with ample information about themselves to establish their *prima facie* showing of adequacy, Mr. Moss has failed, after two rounds of briefing to fill in the gaps of missing basic information necessary to substantively evaluate his motion or even to conduct a preliminary background investigation on him. ***Indeed, Moss has not even provided his own age while blatantly disparaging Afaghi for being a septuagenarian***. Other than a representation from counsel that Moss lives in the United Kingdom and is a retired accountant, nothing is known (or readily available) about Moss. *See Perez v. HEXO Corp.*, 2020 WL 905753, at \*2 (S.D.N.Y. Feb. 25, 2020) ("an investor seeking to be appointed lead plaintiff – though he need only make a preliminary showing that he satisfies the requirements of Rule 23, . . . 'nonetheless need[s] to provide enough information to make [that] preliminary showing'"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*5 (S.D.N.Y. Oct. 30, 2019) ("While the Aroras contend that they need not 'provide adequate information about themselves' on top of the requirements of the PSLRA, . . . they nonetheless need to provide enough information to make a preliminary showing of adequacy under Rule 23."), *adhered to on recons.*, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2020 WL 2614703, at \*3 (S.D.N.Y. May 22, 2020) (ordering interested movants to attend telephonic hearing; declining to appoint movant whose testimony revealed that he "lacks meaningful litigation experience . . . combined with career experience that appears to have no bearing on the management of securities litigation, undermine his claim that he can 'meaningfully oversee and control the prosecution of this consolidated class action'"). Moss should not be permitted to submit evidence of his prima facie adequacy for the first time in a reply brief. *See In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*7 n.10 (N.D. Ill. Nov. 15, 2019) ("a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process"), *recons. denied by* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

- 9 -

4830-9835-8270.v1

## III.    CONCLUSION[9]

The PSLRA requires proof to rebut the presumption that the most adequate plaintiff – here, Ace Association – should be appointed lead plaintiff.  Instead of proof, Mr. Moss proffers a string of suppositions built upon an inaccurate factual foundation, undermined by inapposite legal authority. Consequently, the Court should find Moss has not met his heavy burden to rebut the presumption in favor of Mr. Afaghi's appointment as lead plaintiff.  Mr. Afaghi's motion should be granted.

DATED:  October 12, 2021                      Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

                           s/ David A. Rosenfeld
                         DAVID A. ROSENFELD


58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

---

[9]    Mr. Moss's request for discovery should likewise be denied because there is nothing to suggest that Ace Association may be "incapable of adequately representing the class," and Moss has completely failed to show that there is a "reasonable basis" to authorize discovery into Ace Association's past litigations or Mr. Afaghi's current health.  15 U.S.C. §78u-4(a)(3)(B)(iv); *see Reimer v. Ambac Fin. Grp., Inc*., 2008 WL 2073931, at \*4 & n.5 (S.D.N.Y. May 9, 2008) ("conjecture" is not "reasonable basis" for lead-plaintiff discovery); *In re Tronox, Inc. Sec. Litig*., 262 F.R.D. 338, 347-48 (S.D.N.Y. 2009) ("discovery will only cause unnecessary delay and expense, likely to provide results that are neither helpful nor likely to change the outcome").

4830-9835-8270.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Additional Counsel for [Proposed] Lead Plaintiff

- 11 -

4830-9835-8270.v1

# Mailing Information for a Case 1:21-cv-04161-LDH-PK Skeels v. Piedmont Lithium Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laurence Jesse Hasson**
  lhasson@bernlieb.com,asanchez@bernlieb.com,birkeland@bernlieb.com,ecf@bernlieb.com

- **J. Alexander Hood**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com,ecf@zlk.com,aapton@zlk.com

- **Phillip Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Thomas Livezey Laughlin**
  tlaughlin@scott-scott.com,scott-scott@ecf.courtdrive.com,efile@scott-scott.com

- **Terence Moss**
  lhasson@bernlieb.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Nathaniel A. Tarnor**
  NathanT@hbsslaw.com,sf_filings@hbsslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)