UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                             :
JOHN R. SKEELS,                                              :
*individually and on behalf of all others similarly situated,* :
                                                             :       **MEMORANDUM**
                           Plaintiff,                        :       **DECISION AND ORDER**
                                                             :
              -against-                                      :       21-CV-4161 (LDH) (PK)
                                                             :
PIEDMONT LITHIUM INC.,                                       :
KEITH D. PHILLIPS, BRUCE CZACHOR, and                        :
GREGORY SWAN,                                                :
                                                             :
                           Defendants.                       :
                                                             :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Three movants seek to be named lead plaintiff in a class action litigation involving alleged securities fraud by Piedmont Lithium Inc. ("Piedmont"), Keith D. Phillips, Bruce Czachor, and Gregory Swan (collectively, "Defendants"). Those movants are Anthony and Donna LaForgia (the "LaForgias"), Terence Moss ("Moss"), and Ace Association LLC ("Ace") (collectively, "Movants"). For the reasons stated below, Ace's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel is GRANTED, Ace is appointed as lead plaintiff, and Robbins Geller Rudman & Dowd LLP is appointed as lead counsel.

## BACKGROUND

Piedmont is a publicly traded company that engages in natural resource exploration and development. (Complaint ("Compl."), Dkt. 1, ¶ 7.) Between March 16, 2018 and April 30, 2021, Piedmont made filings with the Securities and Exchange Commission and issued press releases containing representations about Piedmont's progress with exploration, plan for obtaining permits, and potential issues with the lithium market and government relations—all pertaining to a lithium mining project in North Carolina. (Compl. ¶¶ 7, 18-48.) On July 20, 2021, Reuters published an

article reporting that Piedmont still had not applied for the necessary permits despite representing to investors, since 2018, that it was on the verge of doing so; furthermore, Piedmont's relationship with county leaders had been deteriorating. (Compl. ¶ 50.) That same day, Piedmont's shares fell $12.56 per share over the trading day (or nearly 20%) and closed at $50.52 per share. (Compl. ¶ 51.)

On July 23, 2021, John R. Skeels ("Plaintiff") brought this securities class action lawsuit against Piedmont Lithium Inc. ("Piedmont"), Keith D. Phillips, Bruce Czachor, and Gregory Swan (collectively, "Defendants"), identifying a Class Period between March 16, 2018, and July 19, 2021, and alleging that Defendants made false and misleading statements and omitted material adverse facts about Piedmont's business, operations, and financial results in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (*See* Compl.) That same day, Plaintiff's counsel published notice of the lawsuit on Business Wire, in compliance with the Private Securities Litigation Reform Act (the "PSLRA").[1] (*See, e.g.*, Dkt. 7-3.)

In response to the notice, seven purported class members timely filed motions for appointment as lead plaintiff and approval of lead counsel.[2] Four of these movants later filed notices

---

[1] The PSLRA requires plaintiffs, within twenty days of filing the complaint, to

> cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). Business Wire is a suitable vehicle for meeting the statutory requirement of notice. *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 206 (E.D.N.Y. 2019) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004)).

[2] The deadline for filing motions was September 21, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class"); *see also* Fed. R. Civ. P. 6(a).

of non-opposition to the competing motions.[3]  The three remaining movants—Anthony and Donna LaForgia (the "Laforgias"), Terrence Moss ("Moss"), and Ace Association LLC ("Ace," and, collectively, the "Movants")—have opposed one another's motions.  (*See* Dkt. 6 ("LaForgias Mem."), Dkt. 25 ("LaForgias Opp."), Dkt. 30 ("LaForgias Reply"), Dkt. 14 ("Moss Mem."), Dkt. 28 ("Moss Opp."), Dkt. 31 ("Moss Reply"), Dkt. 17 ("Ace Mem."), Dkt. 29 ("Ace Opp."), and Dkt.  32 ("Ace Reply"); *see also* LaForgias Motion, filed Sept. 20, 2021 (Dkt. 5); Moss Motion, filed Sept. 21, 2021 (Dkt. 12); Ace Motion, filed Sept. 21, 2021 (Dkt. 16).)  With their motions, and in compliance with Section 21D(a)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(2), the Movants each submitted a signed certification stating that they have reviewed the Complaint, did not acquire Piedmont securities at the direction of Plaintiff's counsel or in order to participate in this action, are willing to serve as a class representative, have not served or sought to serve as a class representative in any federal securities class action within the past three years, and will not accept payment for serving as a class representative beyond their pro rata share of any recovery, except as ordered or approved by the Court.  (LaForgias Cert. at ECF Page 2 ¶¶ 1-3 5-6, ECF Page 6 ¶¶ 1-3 5-6; Moss Cert. ¶¶ 1-3, 5-6; Ace Cert. ¶¶ 1-3 5-6.) [4]

Lists of the Movants' transactions in Piedmont securities during the class period specified in the Complaint are attached to their certifications.  (*See* Dkts. 7-1 at ECF Pages 3-5, 7-8 (LaForgias), 15-2 at Att. A (Moss), 18-2 at Sch. A (Ace).)  In addition, "Loss Charts" setting forth the same transactions and calculating each Movant's approximate losses are attached to their supporting

---

[3]  In their notices of non-opposition, Alfred B. Wieczorek, Connie and David Robinson, Susan Joorabchi, and Feng Xiao stated that they did not have the largest financial interest in this litigation.  (*See* Dkts. 23, 24, 26, 27.)

[4] "LaForgias Cert." refers to the LaForgias' "Certification of Plaintiff pursuant to Federal Securities Laws," filed as Ex. A to Declaration of Shannon L. Hopkins, dated Sept. 20, 2021 ("Hopkins Decl."), Dkt. 7-1.  "Moss Cert." refers to Moss' "Certification of Named Plaintiff pursuant to Federal Securities Laws," filed as Ex. B to Declaration of Laurence J. Hasson, dated Sept. 21, 2021 ("Hasson Decl."), Dkt. 15-2.  "Ace Cert." refers to Ace's "Certification pursuant to Federal Securities Laws," filed as Ex. B to Declaration of David A. Rosenfield, dated Sept. 21, 2021 ("Rosenfield Decl."), Dkt. 18-2.

declarations. (*See* Dkts. 7-2 (LaForgias), 15-3 (Moss), 18-3 (Ace); *see also* Dkt. 28-1 at ECF Pages 2-3 (Moss, amended), 5 (Ace, amended).)[5]

## DISCUSSION

### I.    Appointment of Lead Plaintiff

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a presumption that the "most adequate plaintiff" is the person or group of persons that "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). The presumption "may be rebutted only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### A.  Presumptive Lead Plaintiff

#### 1.  *Greatest Financial Interest*

In determining which plaintiff has the greatest financial interest, courts in this Circuit generally consider four factors: (1) the total number of shares purchased during the class period; (2) the difference between the number of shares purchased and the number of shares sold during the class period (the net shares purchased ) (3) the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period (the net funds expended); and (4) the approximate losses suffered. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012)

---

[5] The amended Loss Chart for Ace, Dkt. 28-1 at ECF Page 5, was prepared by counsel for Moss and is not contested by Ace.

(citing *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.,* 269 F.R.D. 291, 293 (S.D.N.Y. 2010)). "The fourth factor, the approximate losses suffered, is considered to be the most important." *Xiangdong Chen v. X Fin.,* No. 19-CV-6908-KAM-SJB, 2020 WL 2478643, at *3 (E.D.N.Y. May 13, 2020) (collecting cases).

The Movants reported their financial interests during the Class Period as follows:[6]

|  | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Losses (LIFO)[7] |
|---|---|---|---|---|
| LaForgias | 23,762 | 0 | $501,129.26 | $501,129.26 |
| Moss | 58,116 | 7,000 | $426,172.11 | $51,558.11 |
| Ace | 23,000 | 5,000 | $394,987.82 | $129,087.82 |

### a. The LaForgias

Anthony LaForgia purchased 16,012 shares of Piedmont stock on March 5, 2021 for $1,363,717.89, and sold all of them on March 8, 2021 for $1,036,411.05, incurring a loss of approximately $327,306.84. Donna LaForgia purchased 7,750 shares of Piedmont stock on March 5, 2021 for $665,640.95 and sold them on March 8, 2021 for $491,818.54, incurring a loss of

---

[6] *See* LaForgias Cert. at ECF Pages 3-5, 7-8; Ex. B to Hopkins Decl., Dkt. 7-2 (LaForgias' "Loss Chart" prepared by counsel); Attach. A to Moss Cert.; Ex. C to Hasson Decl., Dkt. 15-3 (Moss' "Loss Chart" prepared by counsel); Ex. A to Moss Opp., Dkt. 28-1, at ECF Pages 2-3 (Moss' amended "Loss Chart" prepared by counsel); Sch. A to Ace Cert.; Ex. C to Rosenfield Decl., Dkt. 18-3 (Ace's "Loss Chart" prepared by counsel); Ex. A to Moss Opp., Dkt. 28-1, at ECF Page 5 (chart of Ace's approximate losses prepared by counsel for Moss and uncontested by Ace).

[7] All the Movants apply the "last in, first out" (LIFO) methodology in calculating their losses, consistent with the "overwhelming trend … nationwide." *Bo Young Cha v. Kinross Gold Corp.,* No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (collecting cases). "Under this formula, 'the last purchases made during the class period [are matched up] with the first sales made during the class period' to offset any gains attained from artificially inflated stock prices during the class period." *Kniffin v. Micron Tech. Inc.,* 379 F. Supp. 3d. 259, 264 (S.D.N.Y. 2019) (alteration in original) (quoting *In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).

approximately $173,822.41.  Together, they claim an approximate total loss of $501,129.26.  These are their only transactions involving Piedmont stock during the Class Period.

Moss and Ace argue that the LaForgias are ineligible for appointment as lead plaintiffs because they sold all their shares before the end of the Class Period.  The Court agrees.

The Supreme Court has held that a plaintiff in a private securities fraud action can recover only if the plaintiff adequately alleges and proves that the defendant's fraudulent conduct proximately caused the plaintiff's economic loss.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-48 (2005).

Although *Dura* was a decision on a motion to dismiss, "the Court's reasoning applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (alteration in original) (quotation omitted); *see also In re Comverse Tech. Inc. Sec. Lit.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).  Because losses incurred before disclosure of the alleged misconduct to the public cannot be proximately linked to that misconduct and are not recoverable, those losses should not be included in any calculation of greatest financial loss. *Comverse*, 2007 WL 680779, at *4.  "Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures." *Sallustro*, 93 F. Supp. 3d at 273 (collecting cases).

Courts in this Circuit, thus, apply *Dura* to adjust LIFO calculations by removing any losses arising from securities bought and sold before the defendant's corrective disclosure. *See, e.g., Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB) et al., 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018) ("Any losses incurred based on 'in-and-out' trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered." (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015)); *Comverse*, 2007 WL 680779, at *3-4 ("losses

result[ing] from 'in-and-out' transactions, which [take] place during the class period, but before the misconduct identified in the complaint [is] ever revealed to the public … must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff" (emphasis omitted)); *Sallustro*, 93 F. Supp. 3d at 273.

Here, the LaForgias sold all their Piedmont shares on March 8, 2021, well before the July 20, 2021 corrective disclosure. (*See* LaForgias Cert. at ECF Pages 3-5, 7-8; Ex. B to Hopkins Decl.) Thus, none of their losses can be attributed to Piedmont's alleged misconduct, and those losses may not be considered by the Court in calculating their approximate losses suffered. In other words, the LaForgias' recoverable losses do not add up to $501,129.26, as alleged; they amount to zero.

The LaForgias argue that "[m]any courts decline to apply a *Dura* calculation at the lead plaintiff stage because doing so requires the court to prematurely delve into a merits analysis." (LaForgias Reply at 5.)

Two of the three cases cited by the LaForgias are from the Sixth Circuit. *Owens v. FirstEnergy Corp.*, No. 2:20-cv-03785 et al., 2020 WL 6873421 (S.D. Ohio Nov. 23, 2020); *Blitz v. AgFeed Indus.*, No. 3:11-0992, 2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012). In *Owens*, the court explicitly noted the difference between the approaches taken by courts in the Second Circuit and the Sixth Circuit at the lead plaintiff stage regarding the lack of causal connection when shares are sold before the corrective disclosure. It stated that "[c]ourts in the Second Circuit read *Dura* to require courts to consider this causal connection when evaluating financial interest at the lead plaintiff stage," *Owens,* 2020 WL 6873421, at *7 (citing *Sallustro*, 93 F. Supp. 3d at 273), but that "[m]ost courts in the Sixth Circuit do not adopt the *Dura* analysis to calculate financial interest at the lead plaintiff stage," *id.* (citing *Blitz*, 2012 WL 1192814, at *4 ("rejecting the *Dura* damages analysis because it 'was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or

LIFO losses'")).  The court, located in the Southern District of Ohio, thus followed the approach of courts in the Sixth Circuit, rather than the Second Circuit.  *See Owens*, 2020 WL 6873421, at *7.

The third case cited by the LaForgias, from the Southern District of New York, involved multiple "partial corrective disclosures" of malfeasance at various points during the class period such that the proposed calculations of *Dura*-eligible losses during those different timeframes would be "convoluted."  *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM) et al., 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019).  There, the court stated that "it is not clear where a *Dura* analysis would lead in this case," and declined to apply the "convoluted loss calculation methodology" proffered by one of the movants, which included the assertion that "'no movant or investor could possibly have suffered *Dura* eligible losses in excess of $10.20 per share.'"  *Id.*

"[W]here (as here) it is clear from the face of the pleadings that most of [movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this [motion to appoint lead plaintiff] stage."  *Comverse*, 2007 WL 680779, at *5.  Most courts that have refrained from appointing a lead plaintiff who has sold the majority or a portion of its stock prior to a corrective disclosure "have done so in the complete absence of partial corrective disclosures or in light of speculative or highly questionable partial disclosures."  *Gentiva*, 281 F.R.D. at 115 (citations omitted).

Here, the LaForgias sold *all* their shares well before July 19, 2021, when the single corrective disclosure which was made.  (Compl. ¶ 50.)  There is no question of multiple, "partial corrective disclosures" of malfeasance.  *See, e.g.*, *Cook*, 2019 WL 1510894, at *3.  Calculation of the LaForgias' financial losses is, therefore, straightforward.  Accordingly, the Court adopts the "*Dura*-adjusted LIFO" methodology to calculate all three Movants' approximate losses suffered and finds that the LaForgias did not incur any recoverable losses in connection with their transactions in Piedmont securities during the Class Period.

### b. Terence Moss

In his opening memorandum, Moss initially alleged that he lost $51,558.11 in connection with his transactions in Piedmont securities. (Moss Mem. at 5; *see* Ex. C to Hasson Decl.) In opposition, Moss increased this figure to $133,669.55 after purportedly accounting for "pre-corrective disclosure transactions" pursuant to *Dura*. (Moss Opp. at 8-9; *see* Ex. A to Moss Opp. at ECF Pages 2-3.) Without explicitly stating how he arrived at his new number, Moss contends that both pre-disclosure gains and losses should be excluded in calculating losses "since all pre-disclosure transactions were of artificially inflated shares." (Moss Opp. at 8 n.6.) The LaForgias and Ace point out, however, that this revised calculation appears to improperly exclude in-and-out *gains*, as well as any in-and-out losses. (*See* LaForgias Reply at 3 ("$133,669 … is only possible if [Moss] improperly excludes any intra-class period gains from his total loss.").)

Moss does not dispute that he excluded gains from his revised calculations. (*See* Moss Opp. at 8 n.6 ("Even if the Court was to remove only in-and-out losses (and not in-and-out gains) … Moss' losses ($51,558) would still represent the largest financial interest ….."); *see also* Moss Reply at 4 n.2.)

Application of *Dura* leads to the exclusion of pre-corrective action *losses* only, not gains. *Dura* did not hold that all in-and-out transactions should be excluded when calculating greatest financial interest. Rather, losses from shares sold before disclosure of the alleged misconduct are excluded because such losses cannot be causally linked to that misconduct and, therefore, should not be included in the calculation of harm alleged. *Dura* does not state any basis for excluding profits derived from selling shares before disclosure of the misconduct. After all, sales resulting in gains do not constitute a harm, so there would be no concern about whether there is a proximate link to the misconduct.

Accordingly, Moss's *Dura*-adjusted LIFO losses total $51,558.11, not $133,669.55.

### c. Ace Association

Ace initially claims to have suffered "over $129,000 in losses" or "approximately $129,087 in losses." (Ace Mem. at 3; Ace Opp. at 2.) Moss argues that if "pre-disclosure transactions" were eliminated pursuant to *Dura*, Ace's financial interest would decrease to $63,600.00. (Moss Opp. at 8.) In reply, Ace does not contest that excluding all losses incurred before corrective disclosure would result in "*Dura* losses of $63,600," but maintains that this amount "still exceed[s] Moss's losses of $51,588." (Ace Reply at 4.)

### d. Application of "Greatest Financial Interest" Test

Applying the four-factor "greatest financial interest" test, the Court finds that Moss purchased a greater number of shares (58,116) than Ace (23,000), that his net number of shares purchased (7,000) was greater than that of Ace (5,000), and that he expended more net funds ($426,172.11) than Ace ($394,987.82). However, the fourth factor, approximate losses suffered, is considered to be the most important. *See Xiangdong Chen*, 2020 WL 2478643, at *3; *see also Gentiva*, 281 F.R.D. at 117 ("It is not self-evident … what weight these [first three] factors should be given in relation to the [fourth factor,] amount of loss, or even why we should consider them at all." (quoting *In re Bally Total Fitness Sec. Litig.*, No. 04C3530 et al., 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005))).

Here, although the difference between Moss' approximate losses ($51,558.11) and Ace's ($63,600.00) is relatively small in dollar amounts, the percentage differential (23.36%) is sufficiently significant for this factor to weigh in favor of Ace. *See, e.g.*, *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27-29 (E.D.N.Y. 2019) (finding it more appropriate to analyze loss differential based on percentage and determining that a 33% differential was "significant," leading to one movant having the largest financial interest despite the other movant prevailing on the first three factors). *But see Juliar v. Sunopta Inc.*, No. 08 Civ. 993 (PAC) et al., 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (finding differential

between $210,993 and $241,708 (or 14.557%) "minimal" in light of the PSLRA's presumption in favor of institutional investors serving as lead plaintiffs).

In addition to this percentage differential, Ace is an institutional investor while Moss is an individual investor. (*See* Moss Mem. at 1; Ace Reply at 7.) "[A]lthough not explicitly stated in the PSLRA, the Court bears in mind that many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs," based on the legislative history of the statute. *Gentiva*, 281 F.R.D. at 113 (citations omitted). Thus, in addition to the greater percentage differential in the *Dura*-adjusted LIFO losses incurred by Ace; the balance also tips in Ace's favor as an institutional investor preferred by the PSLRA.

Accordingly, the Court finds that Ace has the greatest financial interest in this litigation and is the presumptive lead plaintiff.

### 2. Rule 23 Considerations

Having established the presumptive lead plaintiff, the Court needs only to consider "whether the proposed plaintiff has made a 'preliminary showing' that two Rule 23 requirements—typicality and adequacy—are satisfied." *Xiangdong Chen*, 2020 WL 2478643, at *4 (collecting cases); *see also Omdahl v. Farfetch Limited*, No. 19-CV-8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020) (citing *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM), 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016)).

"To establish typicality under Rule 23(a)(3), the party … must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Ace's claims are typical of the class because it purchased Piedmont stock during the class period and suffered losses that it claims were due to Defendant's false and misleading statements. The purported class members are "all those

who purchased or otherwise acquired the publicly traded securities of Piedmont during the Class Period (the 'Class') and were damaged upon the revelation of the alleged corrective disclosure." (Compl. ¶ 53.) Because Ace's claims arise from the same alleged conduct by Defendant, and the class members make similar legal arguments in support of their claims, Ace has established typicality.

Adequacy "entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Flag Telecom Holdings*, 574 F.3d at 35 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Courts find that a plaintiff's interests are not antagonistic to the class where, as here, the case is "based on alleged violations of the Securities Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value" as a result of the false or misleading statements. *See Xiangdong Chen*, 2020 WL 2478643, at *4 (losses tied to drop in value that occurred after IPO); *see also Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM) et al., 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant "suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and … he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to the second prong of the adequacy inquiry, Robbins Geller Rudman & Dowd LLP is qualified, experienced, and able to conduct the litigation. The firm has served as co-lead counsel or sole lead counsel in several federal securities class action fraud matters in various jurisdictions. (*See* Ace Mem. at 6-7.) These cases appear to have involved complex legal issues and large monetary amounts. (*See id.*) Ace therefore also satisfies the adequacy requirement.

Accordingly, because Ace has the largest financial interest in the relief sought, its claims are typical of the class, and Ace is an adequate representative of the class, the Court finds that Ace is the presumptively most adequate plaintiff.

**B.  Rebuttal Evidence**

Moss argues that Ace is incapable of adequately representing the class because it and its manager Ehsan Afaghi are subject to "extensive unique defenses." (Moss Opp. at 4, 13.) Moss claims that Ace and/or Afaghi are serial litigators involved in at least 26 litigations; that Afaghi had to be compelled to attend his own deposition and was sanctioned for discovery abuses; that Ace and Afaghi have had allegations of fraudulent conveyance brought against them; that Afaghi allegedly lied under oath that he was not a party to an action in which he was a defendant; and that Afaghi stated in 2015 that he was 72 years old and in bad and worsening health. (*See* Moss Opp. at 4, 13-14; Moss Reply at 6-7.)

Moss's arguments fail to demonstrate that Ace is subject to unique defenses such that it is incapable of adequately representing the class. Simply having been involved in multiple litigations does not make a movant inadequate. While arguing that Ace is vulnerable to being attacked as a "serial litigator," Moss only cites cases in which courts have found inadequacy where the movants had lawsuits *against* them. (Moss Opp. at 13 n.9.)

Courts have found that a plaintiff's prior misconduct may implicate that plaintiff's ability to serve as a fiduciary. *See, e.g.*, *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504–05 (S.D. Fla. 2002) (movant found inadequate due to two public sanctions for violating securities laws implicating movant's "moral character"). A plaintiff operating "under [ ] a cloud" of criminal fraud investigation may also be inadequate because it is "otherwise preoccupied with its own legal problems." *In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (active criminal investigation against affiliates was considered as a factor in rejecting movant as lead plaintiff). The misconduct of

a principal can also render an institutional investor an inadequate lead plaintiff. *See, In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1321JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (finding member of pension group inadequate because that member's principal was "subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments" and had his National Association of Securities Dealers membership terminated).

However, the allegations Moss describes against Ace and Afaghi are not sufficient to subject them to such unique defenses that they cannot fairly and adequately represent the class. Ace and Afaghi have not been found in violation of securities laws, have not been sanctioned by regulatory authorities, and are not under criminal investigation. The allegations that Ace and Afaghi engaged in fraudulent conveyance and that Afaghi made a false statement arose in the course of litigation, and there is no finding that they did, in fact, commit those acts. The discovery sanctions against Afaghi as a defendant in an unrelated lawsuit are not sufficient to place Afaghi's moral character in question or to show that Ace will not be diligent in this litigation. *Compare Smyth v. China Agritech, Inc.*, No. CV 13-03008-RGK (PJWx), 2013 WL 12136605, at *6 (C.D. Cal. Sept. 26, 2013) (noting the "lack of engagement" by plaintiff and plaintiff's counsel, and finding the adequacy requirement was not satisfied where plaintiff failed to submit declarations in support of its own motion to appoint because it was "unavailable" to its own counsel, and failed to serve defendants for more than ten months after filing the lawsuit).

Finally, Moss's arguments regarding Afaghi's age and health do not affect the adequacy of Ace to serve as lead plaintiff. Ace represents that there are other representatives of Ace who are "authorized, ready, willing, and able to oversee this litigation on Ace Association's behalf." (Ace Reply at 7.) Moss does not dispute this.

Thus, Moss has not presented sufficient evidence to rebut the presumption that Ace is the most adequate plaintiff. [8]

## II.     Appointment of Lead Counsel

The PLSRA requires that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts defer to a plaintiff's selection of counsel "'and will only reject the plaintiff's choice … if necessary to protect the interests of the class.'" *Xiangdong Chen*, 2020 WL 2478643, at *5 (quoting *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018)).  As discussed, Ace's chosen counsel, Robbins Geller, has substantial experience in litigating complex securities class actions on behalf of plaintiffs, and has served as the sole lead counsel in several prominent securities class actions. The Court therefore finds no reason to disturb Ace's selection of lead counsel.

### CONCLUSION

For the foregoing reasons, Ace Association LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel is GRANTED, Ace Association LLC is appointed as lead plaintiff, and Robbins Geller Rudman & Dowd LLP is appointed as lead counsel. The motions of Anthony and Donna LaForgia and of Terence Moss are DENIED.

---

[8] Moss requests "limited discovery into Ace and Afaghi's past litigations and Afaghi's current health." (Moss. Opp. at 15 n.11.)  The PSLRA provides that, "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).  Because Moss has failed to demonstrate such a reasonable basis, the request is denied. *See, e.g.*, *Ferrari v. Impath Inc.*, No. 03 Civ. 5667 (DAB) et al., 2004 WL 1637053, at *7 (S.D.N.Y. July 20, 2004) (movants "have produced not one iota of evidence to give the Court even a reasonable basis to authorize discovery").

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:   February 4, 2022
            Brooklyn, New York