# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Heidi C. Walker
Direct: +1 202.887.3599
Fax: +1 202.530.9595
HWalker@gibsondunn.com

May 13, 2022

<u>VIA ECF</u>

The Honorable LaShann DeArcy Hall
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *In re Piedmont Lithium, Inc. Securities Litigation*, No. 21 Civ. 4161 (LDH) (PK)

Dear Judge DeArcy Hall:

On behalf of Defendants Piedmont Lithium, Inc. ("Piedmont"), Keith Phillips, and Bruce Czachor (collectively "Defendants") in the above-captioned action, we respectfully submit this pre-motion letter pursuant to Rule III(A) of Your Honor's Individual Practices to request a pre-motion conference and leave to file a motion to dismiss the Amended Complaint ("AC"), using the Parties' previously-stipulated briefing schedule. *See* ECF No. 41.

In this putative securities class action, Plaintiff alleges that Piedmont made various misstatements over a three-year period regarding the status of and expected timeline for state and local permits needed for its lithium mining and refining project in Gaston County, North Carolina (the "Project"). AC ¶¶ 1–12. Piedmont owns and is developing the Project to mine and concentrate compounds containing lithium, an essential component for electric batteries and the future of a clean energy economy. AC ¶¶ 3, 31, 56. Phillips is Piedmont's CEO, and Czachor its General Counsel. AC ¶¶ 19–20.

Plaintiff's Amended Complaint traces a series of Piedmont's public disclosures from 2018 to 2021 extending the dates of the Project's expected state and local permitting application and approval timeline. AC ¶¶ 33, 47–53, 67–105. Plaintiff alleges these statements were false when made because Defendants "knew of, or had access to" certain "information" about "the status" of permits and rezoning activities, including that Piedmont had not yet "consulted" or engaged directly with certain regulatory bodies whose approvals were necessary. AC ¶¶ 68, 71–72, 74, 126–127. Plaintiff's principal evidence of scienter is that two executives of Piedmont—Phillips and a non-Defendant—sold small portions of their Piedmont stock in the weeks before the putative class period ended, AC ¶¶ 133–135, as well as after-the-fact statements by Phillips that Piedmont "kn[ew] from day one" that certain permitting and rezoning approvals were needed, and that Piedmont had not been "ready to present" in prior months and had not "done as good a job … with the community" as it could have. AC ¶¶ 62–63. Plaintiff alleges that a July 20, 2021 *Reuters* article—which discussed Piedmont's lack of progress in obtaining permits and certain County Commissioners' comments that Piedmont had managed the permit application process poorly—was a corrective disclosure that caused the stock to drop. AC ¶¶ 9, 142, 144. Plaintiff alleges violations of Sections 10(b) and 20(a) of the Exchange Act. AC ¶¶ 155–170.

**GIBSON DUNN**

The Honorable LaShann DeArcy Hall
May 13, 2022
Page 2

Defendants intend to file a motion to dismiss the AC for failure to state a claim or to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Plaintiff advances a classic "fraud by hindsight" that fails to adequately allege nearly all of the necessary elements of an actionable Section 10(b) or 20(a) claim:[1]

***PSLRA Safe Harbor for Forward-Looking Statements***.  The core alleged misstatements concerning Piedmont's expected permitting timeline all fall squarely within the PSLRA's safe harbor because they are forward-looking statements: (i) "accompanied by meaningful cautionary language" and/or (ii) made without "actual knowledge" of falsity. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010) ("words such as 'expect' identify forward-looking statements"); *see Barilli v. Sky Solar Hldgs., Ltd.*, 389 F. Supp. 3d 232, 261 (S.D.N.Y. 2019) (statements "that several projects would be built within a relatively short time frame" were inactionable).  During the alleged Class Period, Piedmont repeatedly warned investors of myriad risks associated with developing a new lithium mining project, including specifically the likelihood of delays in the permitting process. *See, e.g.*, AC ¶ 86 (describing permitting process as "often costly and time-consuming" and "contingent upon many variables not within our control").  Even if Piedmont's extensive cautionary language were not sufficient, which it was, Plaintiff fails to allege that Defendants had contemporaneous actual knowledge that its projected timelines could not be met.

***Falsity.***  Plaintiff's hindsight-inflected theory fails because "[f]raud depends on the state of events when a statement is made, not on what happens later." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 372 (S.D.N.Y. 2018) (citation omitted).  The fact that Piedmont's Project and schedule evolved over time does not transform all its prior statements into securities fraud.  Piedmont's risk disclosures are also not actionable because Plaintiff fails to allege any undisclosed adverse event that had already occurred when the statements were made.

***Materiality***.  Most of the alleged misstatements—including, for instance, that Piedmont had "an active community engagement program" and that the Project had "strong local government support," AC ¶¶ 77, 67—must also be dismissed as quintessential "puffery and corporate optimism" that cannot invite investors' reasonable reliance. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  Courts routinely find that optimistic timelines, even if misguided, do not constitute material misstatements. *See, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757 (S.D.N.Y. 2018) (finding assertions of company's "remarkable progress" in "advancing [its] expanding pipeline toward commercialization" to be puffery); *Russo v. Bruce*, 777 F. Supp. 2d 505, 521 (S.D.N.Y. 2011) ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud.").

---

[1]  Because the AC fails to adequately allege a primary violation of Section 10(b), nor any Defendant's "culpable participa[tion]" in a supposed fraud, Plaintiff's Section 20(a) claim must be dismissed. *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  For example, the AC does not attribute *any* particular act or scienter to Czachor other than having signed Piedmont's filings. *See* AC ¶¶ 71, 81, 83, 84, 88, 93, 94, 97.

**GIBSON DUNN**

The Honorable LaShann DeArcy Hall
May 13, 2022
Page 3

***Scienter.*** Plaintiff falls far short of its heightened burden to plead specific facts supporting a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiff's motive allegations—that Phillips and another executive sold a small percentage of their total holdings, without mention of profits realized—are patently insufficient. *See, e.g.*, *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 525 (S.D.N.Y. 2020) (finding sale of 65.1% of stock holdings "not sufficiently unusual or suspicious"); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 592 (S.D.N.Y. 2011) ("allegations [that] demonstrate only gross proceeds without identifying net profits … say nothing about a seller's motive").

Nor has Plaintiff pled any "strong circumstantial evidence of recklessness." *Russo*, 777 F. Supp. 2d at 521. Indeed, there are no allegations *at all* indicating that Defendants knew their projections were false when made. Plaintiff alleges only that Defendants knew they would need to obtain certain permits and zoning approvals, but ultimately did not meet with County Commissioners quickly enough. But "corporate officials do not act recklessly simply by making optimistic projections that ultimately fail to materialize." *Id.*; *see also Aratana Therapeutics*, 315 F. Supp. 3d at 761 ("serial revisions of the commercialization timeline" do not "demonstrate … culpable knowledge").[2]

***Loss Causation***: The AC fails to plead loss causation because the sole alleged "corrective disclosure" does not "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint[.]"[3] *In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010). The *Reuters* article alleged to be a corrective disclosure, AC ¶ 59, does not indicate that any prior statement was false, but merely raises questions that may have caused investors to doubt if Piedmont would timely obtain permits in the future. *See Janbay v. Canadian Solar*, *Inc.*, 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) ("speculation by analysts and commentators does not reveal any 'truth' about an alleged fraud"). In fact, the market was long aware that Piedmont did not meet earlier timelines as the projected dates for permitting completion came and went, and the AC notably does not and cannot allege stock losses when it became apparent that Piedmont had not met its expected schedule.

For the foregoing reasons, Defendants respectfully request a pre-motion conference and leave to move to dismiss the AC, pursuant to the Parties' stipulated briefing schedule: moving papers by **June 8, 2022**; opposition papers by **August 8, 2022**, and reply papers by **September 8, 2022**.

---

[2] For similar reasons, Plaintiff fails to adequately allege a known but undisclosed trend or risk that would state a violation of Items 105 or 303 of Regulation S-K, in light of the even more stringent applicable scienter standard. *See, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021) ("'Plaintiffs must demonstrate actual knowledge of an existing trend, event, or risk to allege violations of Section 303 and 105'").

[3] Plaintiff additionally fails to plead loss causation because its sole alleged corrective disclosure occurred after the end of its alleged Class Period, and thus "cannot be 'corrective' for the purpose of establishing loss causation." *In re OSG Sec. Litig.*, 2015 WL 3466094, at *2 n.14 (S.D.N.Y. May 29, 2015).

**GIBSON DUNN**

The Honorable LaShann DeArcy Hall
May 13, 2022
Page 4


Respectfully submitted,

*/s/ Marshall King*

Marshall King

cc:  All counsel of record (via ECF)